IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, | : : : | |
| Plaintiff, | : : | 21 Civ. 3712 |
| v. | : : | **COMPLAINT** |
| MELANIE SIMONS, | : : | |
| Defendant. | : | |

Teachers Insurance and Annuity Association of America ("TIAA") hereby brings the following Complaint against Defendant Melanie Simons ("Simons') and, in support thereof, avers as follows:

### I. **PARTIES**

1. TIAA is a New York life insurance company with its headquarters and principal place of business in New York.

2. Simons is a former Wealth Management Director for TIAA. Simons is a citizen of Virginia and resides at 217 Battle Street SW, Vienna, Virginia 22180.

### II. **JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this dispute by virtue of diversity of citizenship, 28 U.S.C. §1332. The amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

4. Personal jurisdiction and venue are proper in this district under Simons' Voluntary Separation and Release Agreement ("VSP Agreement") providing as follows: "**Resolution of Disputes**. You agree to submit to the jurisdiction of the courts of the State of New York or the

federal court located in the Southern District of New York in connection with any action related to this Agreement…" (*See* VSP Agreement at pp. 13-14, ¶ 19).

### III. FACTS

#### A) Simons' Contractual Obligations

5. TIAA provided Simons with a host of benefits throughout her employment, including the ability to earn a very substantial income.

6. Simons' employment with TIAA terminated in November 2020.

7. In exchange for valuable consideration in excess of $500,000, in the VSP Agreement, Simons promised for a period of 24 months not to "solicit, recruit, induce, urge, or encourage, any employee… of TIAA to terminate, cancel, withdraw, or reduce its relationship with TIAA." (*Id*. at p. 8, ¶ 8(b)(ii)(A)).

8. The VSP Agreement contains other covenants including, without limitation, Simons' agreement not to use or disclose confidential information on behalf of herself or any third party. (*Id*. at pp. 5-6, ¶ 6).

9. Under the VSP Agreement, TIAA is entitled to "all forms of injunctive relief" in the event of an "actual or threatened breach" by Simons of her non-solicitation or confidentiality covenants. (*Id*. at pp. 9-10, ¶ 11).

10. The VSP Agreement also provides that TIAA is entitled to expedited discovery in aid of a preliminary injunction motion "without the necessity that TIAA first seek a court order authorizing such discovery…." (*Id*. at p. 10, ¶ 11).

11. In addition to injunctive relief, under the VSP Agreement, TIAA is entitled to seek legal remedies, including "the recovery of money damages from you." (*Id*. at p. 10, ¶ 11).

12. Significantly, the VSP Agreement states that the over $500,000 in consideration paid to Simons is in return for "observing its terms." (*Id*. at p. 2, ¶ 2). The VSP Agreement

reiterates that "[y]ou agree and acknowledge that the Separation Consideration described in Paragraph 2 is conditioned on you complying with all of the requirements…" (*Id*. at p. 4, ¶ 3).

13. In the VSP Agreement, Simons further acknowledged that she was advised by TIAA to consult with an attorney of her choosing and that **"[y]ou fully understand the significance of all of the terms, conditions, and consideration provided in this Agreement, and you affirm that you are signing it knowingly and voluntarily in acceptance of all of its terms, conditions, and consideration."** (*Id*. at p. 14, ¶ 20(e)-(f)) (bold in the original).

14. As a condition of her ongoing affiliation with TIAA, in 2015 Simons agreed to similar non-solicitation and confidentiality covenants in the TIAA Confidentiality and NonSolicitation Agreement (the "2015 Agreement").

15. The VSP Agreement makes clear that the non-solicitation and confidentiality covenants contained therein "are in addition to and are enforceable in connection with any similar terms in any plan or other agreement to which you are subject and do not supersede such terms, which you hereby confirm and agree to honor fully." (*See* VSP Agreement at p. 6, ¶ 6(c) and p. 9, ¶ 8(e)).

16. The 2015 Agreement (at pp. 8, ¶ 7) likewise provides that TIAA is entitled to a TRO and preliminary injunctive relief in the event of an "actual or threatened breach" by Simons of her non-solicitation or confidentiality covenants.

17. Under the 2015 Agreement, TIAA is entitled to expedited discovery in aid of a preliminary injunction motion, without the need for TIAA to first seek a court order authorizing such discovery. (*See* 2015 Agreement at p. 8, ¶ 7).

18. The 2015 Agreement expressly provides: "11. **<u>EMPLOYEE'S AFFIRMATION OF THOROUGH REVIEW</u>**. Employee affirms that employee has carefully read this

Agreement, knows and understands its terms, conditions and effective date, and has had the opportunity to ask any questions that Employee may have had prior to signing this Agreement." (*Id*. at pp. 10, ¶ 11) (capitalization in the original).

19. Under the 2015 Agreement, TIAA also is entitled to liquidated damages for any violation by Simons of her non-solicitation covenant. (*Id*. at pp. 5-6, ¶ 2(g)).

20. In addition, both the VSP Agreement and 2015 Agreement provide for attorneys' fees and costs in the event of any violations thereof by Simons. (*See* VSP Agreement at p. 10, ¶ 11 and 2015 Agreement at p. 8, ¶ 7).

### B) Three TIAA Wealth Managers Simultaneously Join a New Company as "Co-Founders" With Simons and Simons Refuses to Provide any Satisfactory Explanation

21. On February 26, 2021, Mitchell Falter ("Falter"), Jessie Doll ("Doll"), and Thomas Massie ("Massie"), three TIAA Wealth Managers formerly supervised by Simons, simultaneously gave notice of their resignation effective March 28, 2021.[1]

22. Falter, Doll, and Massie collectively serviced TIAA clients with millions of dollars in assets invested with TIAA and generating very substantial annual revenues for TIAA.

23. On March 30, 2021, just two days after their notice periods concluded, TIAA discovered that Falter, Doll, and Massie all had joined Reframe Wealth as "co-founders" along with Simons. The only four members of Reframe Wealth are Simons and the aforementioned three former TIAA Wealth Managers.

24. By correspondence dated April 1, 2021, among other things, TIAA demanded a satisfactory explanation for the coordinated departures of Falter, Doll, and Massie and their roles as "co-founders" with Simons of Reframe Wealth.

---

[1] All had 30-day notice obligations to TIAA.

25. In an April 2, 2021 response, Simons' attorney questioned the validity of her covenant not to solicit employees, notwithstanding the valuable consideration TIAA paid Simons to comply with it, and failed to provide the satisfactory explanation sought by TIAA.

26. Instead, Simons' attorney stated in conclusory fashion, and without any specifics, that Simons did not solicit any TIAA employees and that Falter, Doll, and Massie "each independently made the choice to resign from TIAA on their own accord without any input or suggestion from Ms. Simons."

27. By correspondence dated April 5, 2021, TIAA reiterated its demand for a satisfactory explanation for the simultaneous departures of Falter, Doll, and Massie.  Indeed, the April 2, 2021 response from Simons' attorney did not say when, if at all, Falter, Doll, and Massie may have reached out to Simons, about going into business together, much less provide any documentation substantiating that they, rather than Simons, had precipitated the discussions about a joint venture.

28. Having the express right under both the VSP Agreement and the 2015 Agreement to expedited discovery "without the necessity that TIAA first seek a court order authorizing such discovery," *see* VSP Agreement at p. 10, ¶ 11 and 2015 Agreement at p. 8, ¶ 7, in this same April 5, 2021 correspondence, TIAA also sought (i) "specific facts leading up to Mr. Falter, Ms. Doll, and Mr. Massie resigning from TIAA to join Reframe Wealth," (ii) details in regards to any communications between Simons, on the one hand, and Falter, Doll, or Massie, on the other hand, from November 2, 2020 (the date Simons signed the VSP Agreement) and the time Falter, Doll, and Massie gave notice of their resignation from TIAA, and (iii) emails, texts, and other documentation reflecting these communications.

29. In its April 5, 2021 correspondence, TIAA sought a response by the following day.

30. In an April 6, 2021 email, Simons' attorney provided assurances that Ms. Simons "wants to be as cooperative as possible responding to your requests" and "[t]o that end, she is currently gathering the information that is necessary for the purpose to respond to the various requests set forth in your letter."

31. Claiming "it is not possible for us to get you a substantive response in the next 24 hours," Simons' attorney proceeded to state: "We can, however, commit to getting you a response by the end of the week, at the latest."

32. Based on the assurances in the email, including that Simons "wants to be as cooperative as possible" and is "currently gathering the information that is necessary for the purpose to respond to the various requests set forth in your letter," TIAA accommodated this request.

33. On Friday, April 9, 2021, Simons' attorney completely reversed course and refused to provide any information or documentation in response to TIAA's April 5, 2021 correspondence.

34. While describing TIAA's requests for information/documentation as "excessive" and "unreasonable," tellingly Simons' attorney said nothing of the sort in his April 6, 2021 email.

35. In his April 9, 2021 correspondence, Simons' attorney did not even provide TIAA with the "information" he previously represented Simons had been "currently gathering."

36. To date, Simons continues to refuse to provide TIAA with any explanation at all, much less a satisfactory explanation, as to how it is that three Wealth Managers all simultaneously resigned from TIAA and shortly thereafter became "co-founders" along with Simons of Reframe Wealth, an entity competing with TIAA in providing investment services to the investing public.

## COUNT I – BREACH OF CONTRACT

37. The allegations of Paragraphs 1 through 36 are incorporated herein by reference with the same force and effect as if set forth in full below.

38. The VSP Agreement and 2015 Agreement, including the non-solicitation and confidentiality provisions, are fully enforceable.

39. TIAA has complied with all of its obligations under the VSP Agreement and 2015 Agreement.

40. Simons has breached the VSP Agreement and the 2015 Agreement or, at a minimum, the threat exists that she has breached and/or intends to breach her obligations thereunder.

## PRAYER FOR RELIEF

**WHEREFORE**, by virtue of the foregoing acts, TIAA demands that judgment be entered in its favor for (i) compensatory damages in an amount to be determined at trial but not less than the more than $500,000 in consideration provided to Simons under the VSP Agreement; (ii) liquidated damages against Simons as provided for in the 2015 Agreement; (iii) punitive damages in an amount to be determined at trial; (iv) a TRO, preliminary injunction, and/or permanent injunction enforcing Simons' non-solicitation and confidentiality obligations; (v) attorneys' fees and costs as provided for in the VSP Agreement and 2015 Agreement; and (vi) any other relief the court deems proper.

Dated: New York, New York
April 27, 2021

KENT, BEATTY & GORDON, LLP

*/s/ Joshua B. Katz*
Jack A. Gordon
Joshua B. Katz
Eleven Times Square
New York, NY 10036
(212) 421-4300
jag@kbg-law.com
jbk@kbg-law.com

Christopher C. Coss (*pro hac vice* application to be submitted)
Coss & Momjian, LLP
111 Presidential Boulevard, Suite 214
Bala Cynwyd, Pa. 19004
(610) 667-6800
(610) 667-6620 (fax)
ccc@cossmomjian.com

*Attorneys for Plaintiff Teachers Insurance and Annuity Association of America*