**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA,<br><br>                              Plaintiff,<br><br>-against-<br><br>MELANIE SIMONS,<br><br>                              Defendant. | Case No. 1:21-cv-03712 |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO

## MOTION FOR PRELIMINARY INJUNCTION

## <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ..................................................................................... 1

II.   STATEMENT OF FACTS ....................................................................... 4

    A.    Simons' Responsibilities as a TIAA Wealth Management Director. ..................... 4

    B.    TIAA's Roll-out of the VSP and the Elimination of Simons' Position. ................. 4

    C.    Popovich's Rejection of Simons for the Managing Director Role
        Following Simons' Sexual Harassment Complaint. ................................. 6

    D.    Simons' Pursuit of Other Employment Outside TIAA. .......................... 6

    E.    TIAA's Wealth Management Downsizing. ........................................ 8

III.  LEGAL ARGUMENT ............................................................................. 9

    A.    TIAA Is Not Entitled To A Preliminary Injunction. ............................. 9

        1.    TIAA Cannot Show Irreparable Harm .................................... 9

        2.    TIAA Cannot Show a Likelihood of Success on the Merits. ................... 13

            a.    Neither the 2015 Agreement nor the VSP Agreement
                Containing the Non-Solicitation Restrictive Covenants Is
                Enforceable. ................................................ 13

            b.    The Non-Solicitation Covenants in the 2015 Agreement
                and the VSP Agreement Are Unenforceable Because
                Simons Was Terminated Without Cause. ....................... 14

            c.    The Non-Solicitation Covenant is Not Necessary to Protect
                 TIAA's Legitimate Interests. ................................. 16

            d.    The Non-Solicitation Covenants Are Not Reasonable in
                Time and Scope. ............................................. 18

            e.    TIAA's Complaint Is Devoid of Any Plausible Facts to
                 Support a Breach of Contract. ................................ 20

        3.    The Balance of Hardship and Public Interest Weigh Against an
            Injunction. ................................................... 22

IV.     TIAA'S REQUEST FOR EXPEDITED DISCOVERY SHOULD BE DENIED............ 23

V.      CONCLUSION................................................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Adecco USA, Inc. v. Staffworks, Inc.*,
  No. 620CV744MADTWD, 2020 WL 7226531  ............................................ 15, 16

*Allen v. Pollack*,
  289 A.D.2d 426, 427, 735 N.Y.S.2d 147 (2d Dept 2001)………………………………………10

*AM Medica Communs. Grp. v. Kilgallen*,
  261 F. Supp. 2d 258 (S.D.N.Y. 2003) ..................................................................... 9

*American Broadcasting Cos., Inc. v. Wolf*,
  52 N.Y. 2d 394, 404, 420 N.E.2d 363, 438 N.Y.S.2d 482 (1981)……………………….…..13

*American Institute of Chemical Engineers v. Rebel-Friel Co.*,
  682 F.2d 382 (2d Cir. 1982) .......................................................................... 13, 14

*Arakelian v. Omnicare, Inc.*,
  735 F. Supp. 2d 22, 41 (S.D.N.Y.  2010)……………………………………………………15, 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 20

*BDO Seidman v. Hirshberg*,
  93 N.Y.2d 382, 712 N.E.2d 1220, 690 N.Y.S.2d 854 (1999) ................................. 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 555 (2007)……………………………………………………………………...20

*Buchanan Capital Mkts., LLC v. DeLucca*,
  2016 NY Slip Op 07611, ¶ 1, 144 A.D.3d 508, 508, 41 N.Y.S.3d 229, 230 (App. Div. 1st
  Dept.)……………………………………………………....……………………………………………..15

*City of New York v. FedEx Ground Package Sys., Inc.*,
  No. 17 CIV. 5183 (ER), 2018 WL 4625765 (S.D.N.Y. Sept. 26, 2018) ........................ 23, 24

*Cleveland-Goins v. City of New York*,
  No. 99 Civ. 1109 (AGS), 1999 WL 673343 (S.D.N.Y. Aug. 30, 1999) ............................... 24

*Coscarelli v. Esquared Hosp. LLC*,
  364 F. Supp. 3d 207 (S.D.N.Y. 2019) .................................................................... 9

*Estee Lauder Cos. v. Batra*,
  430 F. Supp. 2d 158 (S.D.N.Y. 2006) .................................................................... 19

*Firemen's Ins. Co. v. Keating*,
  753 F. Supp. 1146 (S.D.N.Y. 1990) ..................................................................... 10

*FTI Consulting, Inc. v. Graves*,
 No. 05 CIV 6719 NRB, 2007 WL 2192200 (S.D.N.Y. July 31, 2007) ................................. 21

*In re Document Techs. Litig*
 275 F. Supp. 3d 454 (S.D.N.Y. 2017) ................................................................................ 21

*Int'l Creative Mgmt. v. Abate*,
 No. 07 Civ. 1979 (PKL), 2007 WL 950092 (S.D.N.Y. Mar. 28, 2007) ............................... 17

*JBR, Inc. v. Keurig Green Mountain, Inc.*,
 618 Fed. Appx. 31 (2d Cir. 2015) ...................................................................................... 9

*Kamerling v. Massanari*,
 295 F.3d 206 (2d Cir. 2002) ............................................................................................... 9

*Lazer Inc. v. Kesselring*,
 823 N.Y.S.2d 834 (2005) ................................................................................................... 14

*Lentjes Bischoff GmbH v. Joy Envtl. Techs.*,
 986 F. Supp. 183 (S.D.N.Y. 1997) ..................................................................................... 23

*Levinson v. Cello Music & Film Sys., Inc.*,
 199 F.3d 1322 (2d Cir. 1999) .............................................................................................. 9

*Los Angeles v. Lyons*,
 461 U.S. 95 (1983) ............................................................................................................. 11

*Lucente v. Int'l Bus. Mach. Corp.*,
 310 F.3d 243 (2d Cir. 2002) ......................................................................................... 13, 15

*Marsh USA Inc. v. Schuhriemen*,
 183 F. Supp. 3d 529 (S.D.N.Y. 2016) ................................................................................ 23

*Morris v. Schroder Capital Mgmt. Int'l*,
 7 N.Y.3d 616, 825 N.Y.S.2d 697, 859 N.E.2d 503 (2006) ............................................ 15, 16

*Morris v. Schroder Capital Mgmt. Int'l*,
 445 F.3d 525, 529-30 (2d Cir. 2006)……………………………..………...………………..15

*Oliver Wyman, Inc. v. Eielson*,
 282 F. Supp. 3d 684, 695 (S.D.N.Y. 2017)……………..…………………………………...19

*Paramount Brands, Inc. v. Peerless Importers, Inc.*,
 No. CV-92-5190 (CPS), 1992 WL 355601 (E.D.N.Y. Nov. 19, 1992) .......................... 10, 11

*Reed Elsevier Inc. v. Transunion Holding Co.*,
 No. 13 CIV. 8739 PKC, 2014 WL 97317 (S.D.N.Y. Jan. 9, 2014) ........................... 14, 18, 19

*Rodriguez v. DeBuono*,
 175 F.3d 227 (2d Cir. 1998) (per curiam) ................................................................ 9, 10, 12

*Savannah Bank, N.A. v. Sav. Bank of Fingerlakes*,
   691 N.Y.S.2d 227 (4th Dep't 1999) ..................................................................... 18

*SIFCO Indus., Inc. v. Advanced Plating Techs., Inc.*,
   867 F. Supp. 155, 158 (S.D.N.Y. 1994) ………………………………...…………..15

*Silipos, Inc. v. Bickel*,
   No. 1:06-CV-02205, 2006 WL 2265055 (S.D.N.Y. Aug. 8, 2006) ....................................... 18

*Ticor Title Ins. Co. v. Cohen*,
   173 F.3d 63 (2d Cir. 1999) ................................................................. 16, 17, 18, 22

*Trump v. Trump*,
   69 Misc. 3d 285, 301-02, 128 N.Y.S.3d 801, 816 (N.Y. Sup. Ct. 2020) ................... 10, 12, 13

Defendant, Melanie Simons ("Simons"), respectfully submits her Opposition to Teachers Insurance and Annuity Association of America's ("TIAA") Motion for a Preliminary Injunction, Memorandum of Law and request for expedited discovery ("Mem. of Law").

## I.     INTRODUCTION

This case is an example of a Fortune 100, multi-billion-dollar company using its significant financial resources to overreach and inject the federal judiciary in seeking emergency injunctive relief without pleading a single fact in the Complaint or in its moving papers to justify an extreme equitable remedy against a former employee, who TIAA terminated without cause, without evidence of any past harm, immediate harm, or future harm.  Indeed, TIAA ran into the federal courthouse in the face of undisputed representations by an officer of this Court, and an offer of sworn affidavits, attesting that Simons never breached her post-employment obligations to TIAA, nor was she imminently threatening to do so.  TIAA is using this judicial proceeding to bully Simons into disclosing personal and confidential communications and business records relating to the formation of her independent financial advisory firm – all of which she is lawfully entitled to do without intrusion from TIAA.  An objective review of the evidence proffered by the parties demonstrates that TIAA is proceeding here without evidence, without justification, and without good faith – all designed to impede Simons' ability to earn a livelihood – and is instead accusing her of violating patently overbroad non-solicitation agreements.  At the end of the day, TIAA's theory of this case rests entirely on speculation, conjecture, and unfounded allegations that fall far short of the extremely high burden to establish relief under Rule 65 of the Federal Rules of Civil Procedure.

Even casting aside the obvious fatal defects in TIAA's motion – most notably, that there are _no_ factual allegations supporting Simons' purported solicitation of TIAA employees – this case presents circumstances that are entirely inappropriate for injunctive relief, as there are no

allegations regarding the disclosure of trade secrets, the release of confidential information, or the solicitation or disclosure of clients or client-related information.

Although TIAA purports to allege irreparable harm by virtue of three employees resigning in February 2021, TIAA has taken no steps to replace those employees, and even encouraged two of them to resign in 2020.  TIAA's irreparable harm allegations are also undercut by its decision to substantially shrink its Wealth Management division over the past several years by, among other things, shutting down or selling off certain lines of business to actively reduce its headcount and rolling out its Voluntary Separation Program ("VSP") that it actively encouraged approximately 75% of its employees to elect.  Considering the recent choices made by TIAA to significantly decrease its Wealth Management business, TIAA has no claim of irreparable harm.  Indeed, far from "imminent" and "irreparable," TIAA's allegations of harm are wholly speculative and remote, and this reason alone is enough to deny TIAA's motion.

Moreover, significant legal and factual hurdles cast serious doubt on TIAA's likelihood of succeeding on the merits on its breach of contract claim.  New York law prevents the enforcement of non-solicit provisions in an employment agreement against a former employee such as Simons who was involuntarily terminated without cause.  New York law also prevents the enforcement of non-solicit provisions in an employment agreement when, in the absence of trade secrets or confidential information, a plaintiff cannot show that an employee's services were special or unique or that she was irreplaceable, and thus the restrictive covenant is not necessary to protect the company's legitimate interest.  Simons was employed primarily in a managerial role with non-client facing duties.  TIAA then eliminated her role, rejected her application for another position at TIAA (immediately following her complaint of sexual harassment by a Senior Director and close personal friend of the decision-maker), and

simultaneously encouraged her to elect the VSP prior to her termination.  TIAA cannot now turn around and legitimately claim that Simons' services were special or unique and that she was irreplaceable, as required by New York law.  Additionally, the non-solicit agreements that TIAA seeks to enforce are patently overbroad and unnecessarily restrictive of fair competition.  They are not limited in geographic area or scope, and thus are unenforceable on that basis as well.

Aside from enforceability considerations, the facts demonstrate that Simons did not solicit any TIAA employee.  One of the three individuals with whom Simons started a business has sworn under penalty of perjury that, in November 2020, after Simons separated from her employment with TIAA and while she was interviewing for positions with other companies, _he initiated a discussion with her_ about an opportunity to form a partnership after he resigned from employment with TIAA.  Simons' agreement to accept this business opportunity cannot, under any definition of the term, be considered "solicitation."

And, all three individuals with whom Simons started a business have confirmed, again under penalty of perjury, that (a) they were not contacted or solicited by Simons; (b) the decision to resign from TIAA in February 2021 immediately after receiving their bonus was theirs, and theirs alone; (c) Simons did not encourage, persuade, or otherwise influence their decisions in any way to resign from their employment with TIAA; and (d) they would have resigned from TIAA in February 2021 even if they had had no discussions with Simons after she separated from TIAA in November 2020.  Based on these facts, Plaintiff cannot demonstrate a likelihood of success on the merits.

By seeking injunctive relief with absolutely no evidence supporting its solicitation allegations, TIAA is attempting to prevent Simons from focusing on her new business and encumber her ability to earn a living, thereby creating a non-compete where none exists.  There

is no justification whatsoever for TIAA proceeding in this "emergency" fashion and obtaining "expedited" discovery.

## II.    STATEMENT OF FACTS

### A.    Simons' Responsibilities as a TIAA Wealth Management Director.

Simons was employed by TIAA from March 29, 2013 through November 1, 2020. (*See* Exhibit A, Declaration of Melanie Simons at ¶ 1.)  Simons was initially employed in the position of Wealth Management Advisor.  (*Id.* at ¶ 2.)  In March 2015, Simons was promoted to the position of Wealth Management Director.  (*Id.*)  In March 2020, Simons was promoted to Senior Wealth Management Director and remained in that role for the duration of her employment.  (*Id.*)

As a Wealth Management Director and Senior Director, Simons primarily had a managerial/supervisory role.  (*Id.* at ¶ 3.)  She was responsible for managing about 40 employees in three different offices in the District of Columbia, Bethesda, Maryland, and eventually, in 2019, Fairfax, Virginia.  (*Id.*)  Simons was also responsible for the recruiting, interviewing and hiring of Wealth Management Advisor and Administrative Assistant candidates, the observation of advisor/client meetings for coaching and supervisory duties, the peer-to-peer mentoring of and collaboration with other Wealth Management Directors, the development of corporate initiatives, the training and development of direct reports, and other supervisory duties.  (*Id.* at ¶ 4.) Throughout her tenure as a Wealth Management Director, Simons directly worked with only about 5-10 clients at any given time.  (*Id.* at ¶ 5.)

### B.    TIAA's Roll-out of the VSP and the Elimination of Simons' Position.

TIAA first announced its VSP in May 2020.  (*Id.* at ¶ 6.)  TIAA then engaged in a three-month long campaign designed to induce eligible employees to consider accepting the VSP and resign from the company.  (*Id.*)  All eligible employees, including Simons, were encouraged to

consider both internal and external options for employment.  (*Id.* at ¶ 7.)  TIAA also set expectations that directors such as Simons should be encouraging their eligible employees, by way of direct conversations as well as team calls, to consider accepting the VSP.  (*Id.* at ¶ 8.)

On July 1, 2020, Simons participated in an organizational leadership call where it was announced that TIAA's wealth management business would be merging with its institutional relations business and as a result, several leadership roles, including Simons' role, would be eliminated.  (*Id.* at ¶ 9.)  Later that day, Simons participated in a regional call where she and her peers were told by her direct manager that because the Wealth Management Director role had been eliminated nationwide, they would have to apply for new roles if they wished to stay employed by TIAA.  (*Id.* at ¶ 10.)  Simons and her peers were encouraged to elect the VSP even if they intended to pursue other internal job opportunities.  (*Id.*)

The VSP was offered to approximately 75% of TIAA employees, most of whom, unlike Simons, did not have their role eliminated during the VSP election period.  (*Id.* at ¶ 11.)  TIAA did not offer the VSP to a minority of employees who occupied more highly valued or hard-to-fill positions, or to those with critical knowledge or skills whose departure would hurt their business.  (*Id.* at ¶ 12.)  Simons was both eligible for the VSP and counseled by TIAA to elect it.  (*Id.*)  Because of TIAA's elimination of Simons' role which left her with no job at TIAA, and pursuant to TIAA's recommendations and encouragement, Simons elected to participate in the VSP on July 10, 2020 and her election was later approved by TIAA.  (*Id.* at ¶ 13.)  In connection with the VSP, on Simons' termination date she was required to sign an agreement providing her with certain benefits in exchange for, among other things, a release of claims against TIAA and an agreement not to solicit TIAA employees ("VSP Agreement").  (*Id.*)  She also signed a similar agreement not to solicit employees in 2015 ("2015 Agreement").  (*Id.*)

**C.**     **Popovich's Rejection of Simons for the Managing Director Role Following Simons' Sexual Harassment Complaint.**

Approximately three weeks after TIAA eliminated Simons' job, Simons applied and interviewed for Managing Director for the D.C. Metro Region, a new leadership role created by TIAA.  (*Id.* at ¶ 14.)  At that same time, Simons participated in a call with Jill Popovich and several other senior leaders in which inappropriate behavior in the workplace was discussed.  (*Id.* at ¶ 15.)  Because Simons spoke up about her own experience with ongoing sexual harassment at TIAA, Jill Popovich called her immediately after the call and implored her to file an Employee Relations complaint related to the sexual harassment she had experienced.  (*Id.*)  Simons shared a hesitation to do so, as the employee in question was a Senior Director and a known personal friend of Ms. Popovich.  (*Id.*)  Ms. Popovich dismissed Simons' hesitation and stated that she would receive a call from an Employee Relations consultant in the coming days.  (*Id.*)

Although Simons complied and cooperated with the ensuing investigation into her allegations that the Senior Director had sexually harassed her for years, on July 24, 2020, she was told that her story could not be corroborated and that TIAA was closing its investigation into her harassment allegations.  (*Id.* at ¶ 16.)  Approximately one week later, Ms. Popovich rejected Simons' candidacy for the Managing Director position, stating that she lacked "business acumen" necessary for the job -- curious feedback considering that in her most recent performance review, which Ms. Popovich had approved, Simons had received a rating of "Mastery/ Exceptional."  (*Id.* at ¶ 17.)

**D.**     **Simons' Pursuit of Other Employment Outside TIAA.**

Following TIAA's rejection of Simons' candidacy for the Managing Director role, Simons began actively pursuing and scheduling interviews for job opportunities with other companies, as TIAA had encouraged her to do.  (*Id.* at ¶ 19.)  Simons applied for and was in the

interview process for leadership roles with several industry firms, which continued after her termination of employment from TIAA on November 1, 2021.  (*Id.* at ¶ 20.)

In a conversation on November 9, 2020 between Mitchell Falter and Simons, Mr. Falter shared with Simons the opportunity to partner with Jessica Doll, Thomas Massie, and him in the design of a new financial planning business to be founded in the future, after their resignations from TIAA.  (*See* Exhibit B, Declaration of Mitchell Falter at ¶ 3; Simons Decl. at ¶ 21.)  This idea intrigued Simons, especially since she had not found a good fit in her job search.  (Simons Decl. at ¶ 19.)  Therefore, she agreed to assist with the preparation to launch an independent firm after those three individuals' intended departure from TIAA.  (*Id.* at ¶ 21.)

At no point during or after her employment did Simons, or any person acting in concert with her or on her behalf, solicit or attempt to solicit Mr. Falter, Ms. Doll, or Mr. Massie to resign or consider resigning from employment with TIAA or to pursue or accept alternative employment.  (*Id.* at ¶ 22.)

Mr. Falter, Ms. Doll, and Mr. Massie resigned from TIAA the day after receiving their bonuses in February 2021, as did a dozen other TIAA employees.  (Simons Decl. at ¶ 24; Falter Decl. at ¶ 4; Exhibit C, Jessica Doll Declaration at ¶ 3; Exhibit D, Thomas Massie Declaration at ¶ 3.)  The decisions to resign from TIAA in February 2021 were Mr. Falter's, Ms. Doll's, and Mr. Massie's, and each of theirs alone.  (Falter Decl. at ¶ 5; Doll Decl. at ¶ 4; Massie Decl. at ¶ 4.)  Simons did not encourage, persuade, or otherwise influence in any way their decisions to resign from TIAA.  (Falter Decl. at ¶ 5; Doll Decl. at ¶ 4; Massie Decl. at ¶ 4.)  Mr. Falter, Ms. Doll, and Mr. Massie would have resigned from TIAA in February 2021 irrespective of Simons and even if they had had no discussions with her after she separated from TIAA in November 2020.  (Falter Decl. at ¶ 6; Doll Decl. at ¶ 5; Massie Decl. at ¶ 5.)

E.       **TIAA's Wealth Management Downsizing.**

Over the last 4 years, TIAA has addressed waning profit margins with aggressive actions to reduce the cost of employee compensation, including a Voluntary Early Retirement program, a multi-year hiring freeze, the 2020 consolidation of the Retail and Institutional divisions and the VSP that was offered to approximately 75% of the workforce.  (*Id.* at ¶ 23.)  The Wealth Management division in particular reduced headcount through attrition without backfills, consolidation of intra-regional leadership (more direct reports per leader) and transferred significant financial and human resources to a new and far less costly to execute virtual advice model.  (*Id.* at ¶ 24.)  Several lines of business (products) offered through TIAA's Wealth Management Department have shut down or been sold off in the last two years.  (*Id.*)

In 2019, TIAA exited the insurance business.  In 2020, TIAA exited the OCIO (endowments and foundations) business.  (*Id.* at ¶ 25.)  And just last month, TIAA announced the closure of its home lending business and sale to PNC.  (*Id.*)  Less publicly but equally as impactful to the Wealth Management Business, TIAA has also closed their RoboAdvisor (launched in 2017) and their Donor Advised Fund offering to new entrants.  (*Id.*)

Even after approximately 30% of the Wealth Management workforce was approved to depart with the VSP, at least a dozen Wealth Management Advisors resigned without severance after bonuses were paid out on February 28, 2021.  (*Id.* at ¶ 26.)  At that time, at least four other sets of former TIAA Wealth Management Advisors simultaneously departed to start their own financial advising businesses that competes with TIAA, although upon information and belief, TIAA has not pursued litigation against any of these teams for their coordinated and simultaneous departures.  (*Id.* at ¶ 27.)

### III.    LEGAL ARGUMENT

### A.    TIAA Is Not Entitled To A Preliminary Injunction.

To prevail on its motion for a preliminary injunction, TIAA must establish irreparable harm **and** either (1) a likelihood of success on the merits of the breach of contract claim or (2) sufficiently serious questions going to the merits of the claim and a balance of hardships tipping decidedly in TIAA's favor.  *See Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002); *AM Medica Communs. Grp. v. Kilgallen*, 261 F. Supp. 2d 258, 260-64 (S.D.N.Y. 2003).  TIAA cannot meet any of those essential factors, and, thus, the motion for a preliminary injunction should be denied.

### 1.    TIAA Cannot Show Irreparable Harm

The Second Circuit has noted that the irreparable harm requirement is "the single most important prerequisite for the issuance of a preliminary injunction."  *Rodriguez v. DeBuono,* 175 F.3d 227, 234 (2d Cir. 1998) (per curiam) (internal quotation marks omitted); *see JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 Fed. Appx. 31, 33 (2d Cir. 2015) (holding that since irreparable harm "is the *sine qua non* for preliminary injunctive relief[,] ... the moving party must first demonstrate that irreparable harm would be 'likely' in the absence of a preliminary injunction before the other requirements for the issuance of a preliminary injunction will be considered") (quotations and citations omitted); *Coscarelli v. Esquared Hosp. LLC*, 364 F. Supp. 3d 207, 221 (S.D.N.Y. 2019) ("[I]f a party fails to show irreparable harm, a court need not even address the remaining elements" of the preliminary injunction standard).

As a result, unless TIAA can show that its alleged injury "'is neither remote nor speculative, but actual and imminent and … cannot be remedied by an award of monetary damages,' a motion for a preliminary injunction should be denied." *Levinson v. Cello Music & Film Sys., Inc.,* 199 F.3d 1322 (2d Cir. 1999) (unpublished disposition) (quoting *Rodriguez v.*

*DeBuono,* 175 F.3d 227, 234 (2d Cir. 1998)).  "It is equally settled law that there can be no irreparable injury where the injury has already been sustained."  *Trump v. Trump*, 69 Misc. 3d 285, 301-02, 128 N.Y.S.3d 801, 816 (N.Y. Sup. Ct. 2020) (citing *Allen v. Pollack,* 289 A.D.2d 426, 427, 735 N.Y.S.2d 147 (2d Dept 2001)).  In fact, the Complaint demonstrates that the so-called harm already occurred through the resignations of Mr. Falter, Ms. Doll and Mr. Massie in February.  (*See* Compl. at ¶ 21.)

In addition, it is not sufficient for TIAA to demonstrate merely the possibility of irreparable harm.  "An applicant for a preliminary injunction must show that it is *likely* to suffer irreparable harm if equitable relief is denied.  Thus, the standard that movant must meet is extremely high."  *Firemen's Ins. Co. v. Keating*, 753 F. Supp. 1146, 1150 (S.D.N.Y. 1990) (emphasis in the original).

Here, TIAA's Mem. of Law seeks to "ensure that Simons does not solicit additional TIAA employees" in the future.  (Mem. of Law at 6).  It does so without any factual showing that she actually solicited any TIAA employees in the past, or anything beyond generalized assertions about the irreparable harm that it faces in the future.  *See Paramount Brands, Inc. v. Peerless Importers, Inc.*, No. CV-92-5190 (CPS), 1992 WL 355601, at *5 (E.D.N.Y. Nov. 19, 1992) (denying preliminary injunction because generalized assertions of harm are speculative and remote).  There is nothing in the Complaint or in TIAA's Mem. of Law that states how Simons allegedly solicited Mr. Falter, Mr. Massie, or Ms. Doll, when, in what manner, or that she is planning on soliciting any other TIAA employee in the immediate future.  This Court should demand more from TIAA to establish irreparable harm.

Importantly, Simons told TIAA's attorney that she has not solicited any TIAA employee since her involuntary termination in November 2020 and that she will continue to abide by all

her post-employment obligations going forward.  (Simons Decl. at ¶ 29.)  Simons even offered to provide a sworn affidavit to this effect prior to TIAA filing suit, to give the company the reassurance that she is no immediate threat to TIAA.  (*Id.* at ¶ 34.)  That TIAA rejected Simons' offer to provide sworn testimony because of its speculative belief that her testimony "rings hollow" (*Id.* at ¶ 35) further demonstrates that it has no valid, credible factual basis to assert that Simons is an immediate, irreparable threat of harm to TIAA.  And, as the evidence before the Court demonstrates, at no point during or after her employment did Simons, or any person acting in concert with her or on her behalf, solicit or attempt to solicit Mr. Falter, Ms. Doll, or Mr. Massie to resign or consider resigning from employment with TIAA or to pursue or accept alternative employment.  (*Id.* at ¶ 20; Falter Decl. at ¶,5; Doll Decl. at ¶ 4; Massie Decl. at ¶ 4.)

Instead, on November 9, 2020, Mr. Falter *shared with Simons* the opportunity to partner with him in the design of a new financial planning business to be founded in the future, after he resigned from TIAA.  (Falter Decl. at ¶ 3; Simons Decl. at ¶ 21.)  Thereafter, the decision by Mr. Falter, as well as the decisions by Ms. Doll and Mr. Massie to resign from TIAA the day after receiving their bonuses in February 2021, as was a common practice at TIAA, were theirs and theirs alone.  (Falter Decl. at ¶¶ 4,5; Doll Decl. at ¶ 4; Massie Decl. at ¶ 4.)  Simons did not encourage, persuade, or otherwise influence in any way their decisions to resign from TIAA. (Falter Decl. at ¶ 5; Doll Decl. at ¶ 4; Massie Decl. at ¶ 4.)  Indeed, Mr. Falter, Ms. Doll, and Mr. Massie would have resigned from TIAA in February 2021 irrespective of Simons and even if they had had no discussions with her after she separated from TIAA in November 2020.  (Falter Decl. at ¶6; Doll Decl. at ¶ 5; Massie Decl. at ¶ 5.)

Based on the above, TIAA's allegation of irreparable harm is mere speculation that cannot be relied upon to show future harm.  *Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983)

(holding that speculative, remote or future injury is not the province of injunctive relief). Indeed, TIAA's Mem. of Law cites no reason for its allegation that it will suffer a "substantial threat of irreparable injury" in the absence of an injunction. *See* Mem. of Law at 7. Thus, TIAA has failed to meet its burden of showing an alleged injury "neither remote nor speculative, but actual and imminent." *See Rodriguez,* 175 F.3d at 234.

Importantly, TIAA cannot show any injury because of the resignations of three of its Wealth Management Advisors. This is especially true given that TIAA recently has substantially shrunk its business addressed waning profit margins with aggressive actions to reduce the cost of employee compensation, including the VSP that was offered to approximately 75% of the workforce, including Simons, Ms. Doll and Mr. Massie. (Simons Decl. at ¶ 21.) The fact that TIAA instructed Simons to encourage Ms. Doll and Mr. Massie to accept the VSP in 2020, and now not even tried to replace them following their resignations, demonstrates that TIAA did not value their services or that their departures would cause any harm -irreparable or financial – to TIAA, in direct contradiction to the Declaration of Jill Popovich in support of the Motion for Preliminary Injunction. (Simons Decl. at ¶¶ 8, 24; Declaration of Jill Popovich at ¶ 26.)

Likely realizing that it has set forth no facts for why TIAA is facing an actual and imminent threat of harm – that is neither remote nor speculative – TIAA tries to rely on the argument that because Simons "expressly consented" to a preliminary injunction in both the VSP Agreement and the 2015 Agreement, then the "single most important" element of irreparable injury has been met. *See* Mem of Law. at 6-7. A New York state court recently rejected that argument, stating that "[i]rreparable harm must be demonstrated, it is not obtained via a contract clause…there are simply some things that one cannot contract for, such as right to injunctive

relief.  This must be determined by a court…"  *Trump v. Trump*, 69 Misc. 3d 285, 301-02, 128

N.Y.S.3d 801, 816 (N.Y. Sup. Ct. 2020).

Because TIAA's allegations of irreparable harm are entirely remote and speculative, it

has failed to meet its "extremely high" burden with specific facts, and TIAA's motion should be

denied in its entirety on this basis alone.

> **2.      TIAA Cannot Show a Likelihood of Success on the Merits.**
>
> > ***a.       Neither the 2015 Agreement nor the VSP Agreement Containing
> > the Non-Solicitation Restrictive Covenants Is Enforceable.***

In addition to being unable to meet its extremely high burden to establish irreparable

harm, TIAA also cannot show a likelihood of success on the merits of its breach of contract

claim because the restrictive covenants at issue are unenforceable against Simons.

The 2015 Agreement and the VSP Agreement are governed by New York law.  (*See*

Exhibits A-B to the Complaint at p. 13, ¶ 18 and p. 9, ¶ 10, respectively.)  New York courts

"disfavor restrictive covenants in the employment context," enforcing them "only to the extent

they are reasonable and necessary to protect valid business interests."  *Lucente v. Int'l Bus.*

*Mach. Corp.,* 310 F.3d 243, 254 (2d Cir. 2002).  Restrictive covenants must be "rigorously

examined" and "enforced only to the extent necessary to protect the employer from unfair

competition… ." *American Institute of Chemical Engineers v. Rebel-Friel Co.*, 682 F.2d 382,

387 (2d Cir. 1982) (citations omitted).  This strict approach is attributable to "'the general public

policy favoring robust and uninhibited competition,' and 'powerful considerations of public

policy which militate against sanctioning the loss of a [person's] livelihood.'"  *Id*. (quoting

*American Broadcasting Cos., Inc. v. Wolf*, 52 N.Y. 2d 394, 404, 420 N.E.2d 363, 438 N.Y.S.2d

482 (1981)) (quotation omitted).

Importantly, New York law encourages competition through the freedom of employees to solicit others to join a competitive enterprise, and disfavors restrictions on that freedom. *See Lazer Inc. v. Kesselring*, 823 N.Y.S.2d 834, 837 (2005) ("But an agreement of the kind found here, restricting as it does a former employee's freedom to solicit his former co-employees, necessarily also affects the general competitive mold of society, and is in derogation of the concept, invoked in the cases on this subject, that our economy is premised on the competition engendered by the uninhibited flow of services, talent and ideas." (citation and internal quotation marks omitted)).

Thus, New York courts have imposed a reasonableness test and enforced restrictive covenants only "to the extent that [the covenant] is reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee." *BDO Seidman v. Hirshberg,* 93 N.Y.2d 382, 712 N.E.2d 1220, 1223, 690 N.Y.S.2d 854 (1999). Determination of the enforceability of a restrictive covenant "focuses on the particular facts and circumstances giving context to the agreement." *BDO Seidman*, at 390; *see also Reed Elsevier Inc. v. TransUnion Holding Co.*, o. 13 CIV. 8739 PKC, 2014 WL 97317, at *7 (S.D.N.Y. Jan. 9, 2014).

> **b.    *The Non-Solicitation Covenants in the 2015 Agreement and the VSP Agreement Are Unenforceable Because Simons Was Terminated Without Cause.***

It is undisputed that TIAA eliminated Simons' job, thereby involuntarily terminating her. Accordingly, the restrictive covenants in her 2015 Agreement and the VSP Agreement are unenforceable and TIAA cannot condition receipt of her severance benefits on compliance with those restrictive covenants.

New York courts "will not enforce a non-competition provision in an employment

agreement where the former employee was involuntarily terminated." *Arakelian v. Omnicare, Inc.*, 735 F. Supp. 2d 22, 41 (S.D.N.Y. 2010) (citing *SIFCO Indus., Inc. v. Advanced Plating Techs., Inc.*, 867 F. Supp. 155, 158 (S.D.N.Y. 1994)); *Buchanan Capital Mkts., LLC v. DeLucca*, 2016 NY Slip Op 07611, ¶ 1, 144 A.D.3d 508, 508, 41 N.Y.S.3d 229, 230 (App. Div. 1st Dept.) (restrictive "covenants are not enforceable if the employer (plaintiff) does not demonstrate 'continued willingness to employ the party covenanting not to compete'"); *Morris v. Schroder Capital Mgmt. Int'l*, 7 N.Y.3d 616, 859 N.E.2d 503, 507, 825 N.Y.S.2d 697 (N.Y. 2006) ("[A]lthough a restrictive covenant will be enforceable without regard to reasonableness if an employee left his employer voluntarily, a court must determine whether forfeiture is 'reasonable' if the employee was terminated involuntarily and without cause.").  The Second Circuit has held that enforcing a noncompetition provision when the employee has been discharged without cause "would be 'unconscionable' because it would destroy the mutuality of obligation on which a covenant not to compete is based."  *Morris v. Schroder Capital Mgmt. Int'l,* 445 F.3d 525, 529-30 (2d Cir. 2006) (quoting *Lucente,* 310 F.3d at 254-55).

Courts in this Circuit have applied this rationale with equal force to covenants not to solicit employees, reasoning that solicitation is simply a form of competition.  *See Adecco USA, Inc. v. Staffworks, Inc.*, No. 620CV744MADTWD, 2020 WL 7226531, at *n.3 (N.D.N.Y. Nov. 4, 2020); *Arakelian*, 735 F. Supp. 2d at 41-42.  As a result, TIAA's termination of Simons' employment without cause necessitates a finding that the non-solicitation agreements cannot be enforced against her.

Furthermore, TIAA cannot justify the restrictive covenants because Simons reaffirmed them in a severance agreement, which post-employment benefits were conditioned not only on compliance with the restrictive covenant obligations, but also on a full release of claims against

TIAA. This Court addressed that very question in *Arakelian v. Omnicare, Inc.*, and held that the restrictive covenants were unenforceable because the plaintiff was terminated without cause, despite that she signed a severance agreement following her termination. *See Arakelian*, 735 F. Supp. 2d at 41-42; *see also Adecco USA, Inc*, 2020 WL 7226531, at *n.3 (finding non-solicitation covenants unenforceable for an employee who signed a severance agreement). Through this action, TIAA is attempting to force Simons to forfeit her post-employment severance benefits because of an allegation that she violated her non-solicitation covenant. (*See* Compl. at Prayer for Relief, (i)). But, as those covenants are unenforceable when she was involuntarily terminated, any attempt to recoup her severance benefits is not permissible. *Morris v. Schroder Capital Mgmt. Int'l*, 7 N.Y.3d 616, 622, 825 N.Y.S.2d 697, 702, 859 N.E.2d 503, 508 (2006) (stating that "an employer should not be permitted to enforce an unreasonable noncompete clause and simultaneously deny the employee his benefit").

Accordingly, because the restrictive covenants are unenforceable, TIAA cannot succeed on the merits of its breach of contract claim, and the motion for preliminary injunction should be denied on this basis alone.

> **c.** **The Non-Solicitation Covenant is Not Necessary to Protect TIAA's Legitimate Interests.**

Assuming the covenant is not found unenforceable for the reasons stated above, the Second Circuit has only upheld such a covenant if it is necessary "(i) to prevent an employee's solicitation or disclosure of trade secrets, (ii) to prevent an employee's release of confidential information regarding the employer's customers, or (iii) in those cases where the employee's services to the employer are deemed special or unique." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 70 (2d Cir. 1999).

In its Mem. of Law, TIAA failed to identify which element it is relying on to support the protection of a legitimate interest, likely because it cannot meet any element. *See generally*, Mem. of Law at 7-8.  TIAA has never alleged that Simons is threatening to disclose trade secrets or that it fears she will disclose confidential information to solicit clients.  Thus, the only remaining legitimate interest that TIAA can allege is that Simons' services to TIAA were "special and unique," which is not the case. *See Int'l Creative Mgmt. v. Abate*, No. 07 Civ. 1979 (PKL), 2007 WL 950092, at *6 (S.D.N.Y. Mar. 28, 2007) ("[T]he standard for the uniqueness of an employee is high: an employee is unique if his services are of such character as to make his replacement impossible or that the loss of such services would cause the employer irreparable injury." (internal quotation marks omitted)).  New York law finds only two sets of circumstances to constitute uniqueness: (1) where the employee's services depend on special talents, such as "musicians, professional athletes, actors, and the like;" and (2) employees who work as brokers, traders, or salespersons based on their relationships with the customers with whom they deal. *Ticor*, 173 F.3d at 70-71.

In this case, there is no evidence that Simons' services to TIAA required special talents akin to those of "musicians, professional athletes, actors, and the like." *Ticor,* 173 F.3d at 70. Nor does Simons' role fit the second category applicable to brokers and salespersons.  There has been no allegation that Simons' duties at TIAA were analogous to that of a commodities broker or title insurance salesman.  Unlike such employees, whose primary or even exclusive role is to develop relationships and transact business with potential trading partners, Simons' responsibilities at TIAA were primarily managerial and supervisory, consisting of, among other duties, managing approximately 40 employees in three different offices in the D.C. metro area as well as recruiting, mentoring, developing corporate initiatives, and training.  (Simons Decl. at ¶¶

3, 4).  As such, she does not fall under the second set of circumstances to justify a legitimate interest to protect.  *See Reed Elsevier Inc. v. Transunion Holding Co.*, 2014 WL 97317, at \*11 (holding that claim of a legitimate interest in protecting its client base is too speculative to support the entering of a preliminary injunction when employee was primarily a supervisor and manager); *Silipos, Inc. v. Bickel*, No. 1:06-CV-02205, 2006 WL 2265055, at \*5 (S.D.N.Y. Aug. 8, 2006) (employee's responsibilities were primarily managerial and supervisory, rather than client-focused responsibilities that have been the basis for a finding of legitimate interest).

Moreover, TIAA eliminated Simons' position nationwide and subsequently rejected her candidacy for another position (Simons Decl. at ¶¶ 7, 8, 15), which further supports the conclusion that TIAA does not consider her to be irreplaceable.  *See Savannah Bank, N.A. v. Sav. Bank of Fingerlakes*, 691 N.Y.S.2d 227, 229 (4th Dep't 1999) ("Restrictive covenants will be enforced only so far as necessary to protect trade secrets or in cases where the employee's services are so unique or extraordinary as to be irreplaceable.").

In sum, this Court should find that TIAA has no legitimate business interest to protect through the non-solicitation covenant because it cannot show that the nature of Simons' services were special or unique or that she was replaceable, especially given that her position was eliminated and she was rejected from another internal position.

### d.  The Non-Solicitation Covenants Are Not Reasonable in Time and Scope.

The restrictive covenants are also unenforceable because they are too broad in time, geographic area, and scope.  Both the 2015 Agreement and the VSP Agreement provide for a 24-month restriction following Simons' termination and are not limited in any geographical area or scope, despite that TIAA only provides advisory services in the United States.  (*See* VSP Agreement at p. 8, ¶ 8(b)(ii)(A)).

Given the lack of any geographic scope and the nature of Simons' duties at TIAA focused in the D.C. metro area and in not having material customer interaction, and certainly not any customer interaction outside of the United States, a global 24-month covenant is unreasonable and unenforceable under recent New York law.  *See e.g.*, *Reed Elsevier Inc.*, 2014 WL 97317, at *8 (finding a worldwide covenant extending 31 months after employee's cessation of employment unreasonable and unenforceable); *Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158, 182 (S.D.N.Y. 2006) (reducing worldwide covenant of 12 months to 5 months as more reasonable).  However, even if a 24-month global non-solicitation restriction is found to be enforceable, the Court must still consider whether the restrictive covenant here is "greater than is required" for the advancement of that interest.  Here, the non-solicitation clause is incredibly broad, as it expressly instructs Simons not to "solicit, recruit, induce, urge, or encourage, any employee…of TIAA to terminate, cancel, withdraw, or reduce its relationship with TIAA."  (*See* VSP Agreement at p. 8, ¶ 8(b)(ii)(A)).  This Court recently analyzed a similar non solicitation clause and noted that the clause was overbroad and "could restrict even most innocuous conversations between coworkers regarding professional and personal advice. For example, one can easily imagine scenarios in which an employee might seek advice from a co-worker concerning a job opportunity, headhunter call, or contemplated life change that would inevitably result in separation from [the employer] — perhaps to become a full-time parent, go back to school for a degree, pursue a career in the arts or a religious vocation, or some other radical career change."  *Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 695 (S.D.N.Y. 2017).  This Court further opined that "a non-solicitation clause that would compel silence in such circumstances would certainly be overly broad, impose undue hardship on the co-worker, and be injurious to the public."  *Id.*

19

Accordingly, this Court should find that the restrictive covenants are unenforceable because they are too broad in time, geographic area, and scope.

> ### e. *TIAA's Complaint Is Devoid of Any Plausible Facts to Support a Breach of Contract*

TIAA also cannot demonstrate a likelihood of success on the merits because the Complaint is completely devoid of any facts to establish the element of a breach of contract. Indeed, the entire Complaint is generic and merely quotes from the various agreements, letters between counsel, and references actions taken by third parties, but nowhere mentions any conduct on the part of Simons, *the Defendant*.  (*See* Compl. at ¶¶7-36.)  The only action that TIAA is complaining of is that Simons refuses to provide TIAA with an "explanation" of the actions of her business partners when they were employed at TIAA.  (*Id.* at ¶36.)  It is nonsensical to think that Simons is the appropriate source of that information, but in any event, refusing to explain the thought process of others is not a breach of contract.

It is black letter law that a Complaint must contain sufficient factual allegations to state a breach of contract that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is only facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. 554, 556 (2007)).

To establish breach of contract, TIAA must allege and prove that Simons solicited a TIAA employee to "withdraw" his or her relationship with TIAA.  But, as the evidence before the Court demonstrates, at no point during or after her employment did Simons solicit or even attempt to solicit anyone, including, but not limited to, Mr. Falter, Ms. Doll, or Mr. Massie, to

resign or consider resigning from employment with TIAA or to pursue or accept alternative employment.  (Simons Dec. at ¶22; Falter Decl. at ¶ 4; Doll Decl. at ¶ 4; Massie Decl. at ¶ 4.)  Rather, it was Mr. Falter who shared with Simons the opportunity to partner with him in the design of a new financial planning business to be founded in the future, after he resigned from TIAA.  (Falter Decl. at ¶3; Simons Decl. at ¶21.)

Recognizing that it has no evidence of any actual breach by Simons, the only conduct that TIAA is relying on to support its breach of contract claim is that three former TIAA employees resigned on the same day immediately after bonuses were paid, as did many other TIAA employees.  (*See* Compl. at ¶ 22.)  However, pure speculation that a breach may have occurred merely because three employees resigned the day after receiving their bonus and then started a business with Simons does not implicate Simons in any wrongful conduct, and this Court has rejected identical breach of contract allegations.  *See FTI Consulting, Inc. v. Graves*, No. 05 CIV 6719 NRB, 2007 WL 2192200 at *8 (S.D.N.Y. July 31, 2007) (finding that the plaintiff's speculation that the defendant "must have had a hand" in the recruitment of its employees due to temporal proximity of their departures was insufficient to establish solicitation); *see also In re Document Techs. Litig.*, 275 F. Supp. 3d 454, 466 (S.D.N.Y. 2017) (stating that protecting against harm arising from the coordinated resignations of several employees is not a legally recognizable interest for the purpose of a non-solicitation covenant).  Here, the decisions to resign from TIAA in February 2021 were Mr. Falter's, Ms. Doll's, and Mr. Massie's, without any encouragement or influence from Simons.

TIAA cannot establish a likelihood of success on the merits of its breach of contract claim because there is no concrete allegation of any actual solicitation by Simons.  Accordingly, its motion for a preliminary injunction should be denied.

3. **The Balance of Hardship and Public Interest Weigh Against an Injunction.**

Granting TIAA's injunction would be more harmful to Simons than TIAA and, as a result, the public interest weighs against issuing an injunction. Simons has already affirmed in writing, and now under penalty of perjury, that she has not solicited former TIAA employees and that she will not do so in the future. What is at the heart of TIAA's motion for a preliminary injunction is an attack on Simons to lawfully compete against TIAA in the marketplace (a marketplace in which TIAA has largely abandoned its efforts), intrude on her ability to earn a living, and prevent her from having lawful communications with former co-workers. Indeed, the hostile and unreasonable approach TIAA has taken with respect to Simons since April 1, 2020 demonstrates that it is pursuing this litigation in bad faith, without evidence of wrongdoing, and for an improper purpose. At a minimum, the significant time and money that Simons has had to spend on this matter away from her business demonstrates that TIAA is looking to prevent her from lawfully competing and draw down her severance benefits on legal fees.

In sum, any enforcement of the 2015 Agreement or the VSP's restrictive covenants runs contrary to New York's strong policy disfavoring agreements that would cause an individual to lose her livelihood. *See Ticor*, 173 F.3d at 69 ("[C]ourts must weigh the need to protect the employer's legitimate business interests against the employee's concern regarding the possible loss of livelihood, a result strongly disfavored by public policy in New York.").

For all the foregoing reasons and based on the particular facts and circumstances unique to this case, TIAA has not met New York's reasonableness test and the restrictive covenants should be held unenforceable against Simons.

## IV.    TIAA'S REQUEST FOR EXPEDITED DISCOVERY SHOULD BE DENIED

This Court should deny TIAA's request for expedited discovery because its request is a not-so veiled attempt to engage in a broad fishing expedition to try and search for evidence to support its current claims, or other claims against Simons and/or third parties.  Simply put, TIAA cannot "start with a generic complaint, then use an invasive discovery process to find and articulate specific claims."  *City of New York v. FedEx Ground Package Sys., Inc.*, No. 17 CIV. 5183 (ER), 2018 WL 4625765, at *5 (S.D.N.Y. Sept. 26, 2018).

To evaluate a request for expedited discovery, this Court considers the following factors: (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.  *Lentjes Bischoff GmbH v. Joy Envtl. Techs.*, 986 F. Supp. 183, 189 (S.D.N.Y. 1997).

As set forth above, TIAA does not meet these factors as it cannot demonstrate irreparable injury, lacks any probability of success on the merits of its breach of contract claim and does not present any evidence that TIAA will be injured without the expedited discovery.  Rather, it simply asserts, without any basis, that expedited discovery will "streamline the preliminary injunctive proceedings."  Mem. of Law at 10.  However, this Court, in a similar non-solicitation context, concluded that discovery should proceed at the "brisk pace prescribed by the Court's general scheduling practices." *Marsh USA Inc. v. Schuhriemen*, 183 F. Supp. 3d 529, 537 (S.D.N.Y. 2016) (denying expedited discovery request because discovery was not needed to avoid prejudicing the plaintiff).

More importantly, expedited discovery should be denied because the scope of the discovery that TIAA is seeking covers information from non-parties and communications

between Simons and non-parties that have nothing to do with whether she was soliciting them while they were employed at TIAA.  In November 2020, *after Simons separated from her employment with TIAA*, Mr. Falter initiated a discussion with her about an opportunity to form a partnership with him after he resigned from my employment with TIAA.  (Falter Decl. at ¶ 3, Simons Decl. at ¶ 21.)  At that time, Simons was interviewing for positions with other competitors to TIAA.  (Simons Decl. at ¶20.)  Thereafter, what communications she had with Mr. Falter, Ms. Doll or Mr. Massie is not relevant to TIAA's claims because Simons is not restricted from speaking to them.  Simons can communicate about a wide range of topics, including those involving personal and business-related issues so long as she was not engaging in solicitation, which she was not.  Accordingly, the request for expedited discovery is overbroad, irrelevant and includes information that is already in the hands of TIAA through Simons' sworn declaration in this proceeding (which was offered to TIAA prior to the commencement of litigation) and the declarations of Mr. Falter, Ms. Doll, and Mr. Massie.

What is clear is that TIAA filed this lawsuit without facts to support its breach of contract claim against Simons and is using the preliminary injunction proceeding to request broad expedited discovery.  Allowing such broad discovery would put Simons at risk of becoming subject to "a fishing expedition."  *City of New York*, No. 17 Civ. 5183 (ER), 2018 WL 4625765, at *5 (S.D.N.Y. Sept. 26, 2018)*; Cleveland-Goins v. City of New York*, No. 99 Civ. 1109 (AGS), 1999 WL 673343, at *2 (S.D.N.Y. Aug. 30, 1999).

Should this case proceed beyond a Rule 12(b)(6) motion to dismiss, which Simons will file very soon, any discovery should proceed under the Court's regular scheduling orders.  Accordingly, Simons requests that this Court deny TIAA's request for expedited discovery, but to the extent that expedited discovery is granted, it should be granted for Simons as well.

## V.        CONCLUSION

For all the foregoing reasons, Simons respectfully requests this Court deny TIAA's

Motion for a Preliminary Injunction and request for expedited discovery.


Dated:  May 4, 2021                              Respectfully submitted,


                                                  /s/  Kara M. Maciel
                                                 Kara M. Maciel, Esq. (admitted *pro hac vice*)
                                                 Jordan Schwartz (SDNY Bar No. JS 8310)
                                                 CONN MACIEL CAREY LLP
                                                 5335 Wisconsin Ave., NW, Suite 660
                                                 Washington, DC 20015
                                                 Tel: (202) 909-2731
                                                 kmaciel@connmaciel.com

                                                 Counsel for Defendant
                                                 Melanie Simons

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2021, a true and correct copy of the foregoing was

delivered through the Court's ECF system, to:

> Jack A. Gordon
> Joshua B. Katz
> Eleven Times Square
> New York, NY 10036
>
> Christopher C. Coss
> Coss & Momjian, LLP
> 111 Presidential Boulevard, Suite 214
> Bala Cynwyd, PA  19004

> /s/  Jordan B. Schwartz
> Jordan B. Schwartz
> SDNY Bar No. JS 8310
> CONN MACIEL CAREY LLP
> 5335 Wisconsin Ave., NW, Suite 660
> Washington, DC 20015
> jschwartz@connmaciel.com
> Tel: (202) 909-2731
>
> Counsel for Defendant
> Melanie Simons