# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA,<br><br>       Plaintiff,<br><br>-against-<br><br>MELANIE SIMONS,<br><br>       Defendant. | **DECLARATION OF MELANIE SIMONS**<br><br>Case No. 1:21-cv-03712 |

I, Melanie Simons, hereby declare that:

**My Responsibilities as a Wealth Management Director**

1. I was employed by Teachers Insurance and Annuity Association of America ("TIAA") from March 29, 2013 through November 1, 2020.

2. I was initially employed in the position of Wealth Management Advisor. In March 2015, I was promoted to the position of Wealth Management Director. In March 2020, I was promoted to Senior Wealth Management Director and remained in that role for the duration of my employment.

3. As a Wealth Management Director and a Senior Wealth Management Director, I primarily had a managerial/supervisory role. I was responsible for managing approximately 40 employees in three different offices in the District of Columbia, Bethesda, Maryland, and eventually, in 2019, Fairfax, Virginia.

4. Among other duties, I was responsible for the recruiting, interviewing and hiring of Wealth Management Advisor and Administrative Assistant candidates, the observation of advisor/client meetings for coaching and supervisory duties, the peer-to-peer mentoring of and collaboration with other Wealth Management Directors, the development of corporate initiatives, the training and development of direct reports, and other supervisory duties.

5. Throughout my tenure as a Wealth Management Director, I directly worked with only about 5-10 clients at any given time.

**TIAA's Roll-out of the Voluntary Separation Program ("VSP") and the Subsequent Elimination of My Job**

6. TIAA first announced the VSP in May 2020.  TIAA then engaged in a three-month long campaign designed to induce eligible employees to consider accepting the VSP and resign from the company.

7. All eligible employees, including me, were encouraged to consider both internal and external options for employment.  This encouragement was presented on enterprise-wide calls, regional calls, leadership calls, one-on-one calls and through my direct manager as well as Jill Popovich.

8. TIAA also set expectations that directors such as me should be encouraging their eligible employees, by way of one-on-one conversations as well as team calls, to consider accepting the VSP.

9. On July 1, 2020, I participated in an organizational leadership teleconference where it was announced that TIAA's wealth management business was going to merge with its institutional relations business and as a result, a number of leadership roles, including my role, would be eliminated.

10. Later that day, I participated in a regional conference call where my peers and I were told by my direct manager that because the Wealth Management Director role had been eliminated nationwide, we would have to apply for new roles in the coming weeks if we wished to stay employed by TIAA. We were encouraged to elect to partake in the VSP even if we intended to pursue other internal job opportunities.

11. The VSP was offered to approximately 75% of TIAA employees, most of whom, unlike me, did not have their role eliminated during the VSP election period.

12. TIAA did not offer the VSP to a minority of employees who occupied more highly valued or hard-to-fill positions, or to those with critical knowledge or skills whose departure would hurt their business.  I was both eligible for the VSP and counseled by TIAA to elect it.

13. Because of TIAA's elimination of my role which left me with no job at TIAA, and pursuant to its recommendations and encouragement, I elected to participate in the VSP on July 10, 2020 and my election was later approved.  In connection with the VSP, I was required to sign an agreement upon termination providing me with certain benefits in exchange for, among other things, a full release of claims against TIAA and an agreement not to solicit TIAA employees ("VSP Agreement"). I signed a similar agreement not to solicit employees in 2015 ("2015 Agreement").

**Ms. Popovich's Rejection of me for the Managing Director Role Following My Sexual Harassment Complaint**

14. Approximately three weeks after TIAA eliminated my job, I applied and interviewed for the role of Managing Director for the D.C. Metro Region, a new leadership position created by TIAA.

15. At that same time, I participated in a conference call with Jill Popovich and several other senior leaders in which inappropriate behavior in the workplace was discussed. Because I spoke up about my own experience with ongoing sexual harassment at TIAA, Jill Popovich called me immediately after the conference call and implored me to file an Employee Relations complaint related to the sexual harassment I had experienced. I shared a hesitation to do so, as the employee in question was a Senior Director and a known personal friend of Ms. Popovich. Ms. Popovich dismissed my hesitation and stated that I would receive a call from an Employee Relations consultant in the coming days.

16. Although I complied and cooperated with the ensuing investigation into my allegations that the Senior Director had sexually harassed me for years, on July 24, 2020, I was told that my story could not be corroborated and that TIAA was closing its investigation into my harassment allegations.

17. Approximately one week later, Ms. Popovich rejected my candidacy for the Managing Director position, stating that I lacked "business acumen" necessary for the job -- curious feedback considering that in my most recent performance review, which Ms. Popovich had approved, I had received a rating of "Mastery/ Exceptional."

18. I have held concerns since July 2020 about the fact that Ms. Popovich implored me to report sexual harassment by a long-time employee and Senior Director at TIAA and her close personal friend, and then subsequently rejected my candidacy for the Managing Director role immediately after the conclusion of the investigation.

**My Pursuit of Other Employment Outside TIAA**

19. Following the rejection of my candidacy for the Managing Director role, I began actively pursuing and scheduling interviews for job opportunities with other companies, as TIAA had encouraged me to do.

20. I applied for and was in the interview process for leadership roles with several industry firms, including Mercer Advisors, Vanguard, Verdence Wealth Management, and Raymond James, and my pursuit of at least one those opportunities continued after the termination of my employment from TIAA on November 1, 2021.

21. In a conversation on November 9, 2020 between Mitchell Falter and me, Mr. Falter shared with me the opportunity to partner with Jessica Doll, Thomas Massie, and him in the design of a new financial planning business to be founded in the future, after their resignations from TIAA. This idea intrigued me, especially since I had not found a good fit in my job search. Therefore, I agreed to assist with the preparation to launch an independent firm after those three individuals' intended departure from TIAA.

22. At no point during or after my employment did I, or any person acting in concert with me or on my behalf, solicit or attempt to solicit Mitchell Falter, Jessica Doll, or Thomas Massie to resign or consider resigning from employment with TIAA or to pursue or accept alternative employment.

### TIAA's Wealth Management Downsizing

23. Over the last 4 years, TIAA has addressed waning profit margins with aggressive actions to reduce the cost of employee compensation, including a Voluntary Early Retirement program, a multi-year hiring freeze, the 2020 consolidation of the Retail and Institutional divisions and the VSP that was offered to 75% of the workforce.

24. The Wealth Management division in particular reduced headcount through attrition without backfills, consolidation of intra-regional leadership (more direct reports per leader) and transferred significant financial and human resources to a new and far less costly to execute virtual advice model. Several lines of business (products) offered through TIAA's Wealth Management Department have shut down or been sold off in the last two years.

25. In 2019, TIAA exited the insurance business. In 2020, TIAA exited the OCIO (endowments and foundations) business. And just last month, TIAA announced the closure of its home lending business and sale to PNC. Less publicly but equally as impactful to the Wealth Management Business, TIAA has also closed their RoboAdvisor (launched in 2017) and their Donor Advised Fund offering to new entrants.

26. Even after about 30% of the Wealth Management workforce was approved to depart with the VSP, at least a dozen Wealth Management Advisors resigned without severance after bonuses were paid on February 28, 2021.

27. At that time, at least four other sets of former TIAA Wealth Management Advisors simultaneously departed to start their own financial advising businesses that competes with TIAA, although upon information and belief, TIAA has not pursued litigation against any of these teams for their coordinated and simultaneous departure.

**My Representations that I did Not Solicit TIAA Employees**

28. On April 1, 2021, I received a letter from counsel for TIAA stating that TIAA "strongly believes" I solicited Mr. Falter, Ms. Doll, and Mr. Massie in violation of my VSP Agreement and demanding that I assure him by noon the next day that I had not done so.

29. On April 2, 2021, my attorney responded via letter and confirmed that I had not solicited any TIAA employee to leave their employment and/or to work for my new company, including Mr. Falter, Ms. Doll, and Mr. Massie, and that each of those individuals independently made the choice to resign from TIAA on their own accord without any input or suggestion from me.  My attorney also confirmed that that I take my contractual obligations seriously and would continue to abide by all of my post-employment obligations to TIAA going forward.

30. On April 5, 2021, my attorney received another letter from TIAA's counsel stating that my response was not satisfactory and demanding an explanation for events that had no relation to me, including facts relating to Mr. Falter's, Ms. Doll's, and Mr. Massie's departures from TIAA, the manner in which they provided notice to TIAA, and specific facts leading up to their resignations.  TIAA's counsel also demanded -- within 24 hours -- production of all emails, text messages, and other documents reflecting any communications between those three individuals and me from November 2020 through February 2021.  TIAA's counsel stated that I was required to turn over these documents immediately because the VSP Agreement allows for "expedited discovery."

31. The next day, my attorney informed TIAA's counsel that I was gathering information necessary for our response, and that we would provide a response by the end of the week, at the latest.  At no point did my counsel inform TIAA's counsel that I was gathering information "that reveal the timing, frequency, and substance of [my] communications with the three former TIAA employees" as TIAA claims in its legal papers filed with this Court, or that I was gathering information "to provide to TIAA, including email and text communications," as Jill Popovich claims in her sworn Declaration.

32. On April 9, 2021, my attorney responded to TIAA counsel's April 5 letter, reiterating that I did not solicit, induce, or otherwise approach Mr. Falter, Ms. Doll, or Mr. Massie, directly or indirectly, during their employment to leave TIAA.  My attorney also cited applicable case law and provided additional information that I had gathered regarding the typical departures of TIAA employees following their receipt of bonus payments.

33. On April 22, 2021, counsel for TIAA sent a letter to my attorney stating that "based on [my] conduct, TIAA has no choice but to proceed forward with litigation to enforce its non-solicitation and other rights," and enclosing the draft complaint,

34. On April 23, 2021, my counsel reiterated to TIAA's counsel that TIAA has no contractual right to my emails, text messages or other documents prior to litigation, despite the VSP agreement's reference to "expedited discovery." My counsel also stated that the draft complaint failed to allege a single fact against me of wrongdoing. Finally, my counsel offered to have me provide a sworn affidavit attesting to that fact that I had complied and will continue to abide by my post-employment obligations to TIAA, and that I would be willing to ask Mr. Falter, Ms. Doll and Mr. Massie if they similarly would provide a sworn affidavit attesting to the facts of this case.

35. On April 26, 2021, TIAA's counsel responded, stating that the offer to provide a sworn affidavit from me and/or others "is hollow." The complaint was filed the next day.

### My Rights to Earn a Living in the Financial Services Industry

36. I believe that I have the right to earn a living in the financial services industry, which includes the right to co-found a small business with former colleagues, without harassment from a Fortune 100, multi-billion dollar firm. I also believe that I have the right to retain the severance payments made to me by TIAA in exchange for my good-faith observance of the VSP obligations.

37. I also believe that TIAA, and in particular Jill Popovich, has a clear grievance against me personally and is targeting me in an attempt to encumber my ability to earn a living, prevent me from lawfully competing with TIAA, and recoup the severance payments to which the company contractually agreed to pay me in exchange for my release of claims against it.

*[The remainder of this page has intentionally been left blank]*

38. I further declare that I have fully and good faith complied with this Court's Order of April 29, 2021, and I have not and am not soliciting, recruiting, inducing, urging, or encouraging, or attempting to solicit, recruit, induce, urge, or encourage any employee, contractor, consultant, vendor, supplier, licensee, and licensor of TIAA to terminate, cancel, withdraw or reduce its relationship with TIAA.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: May 4, 2021

_____
Melanie Simons