**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF NEW YORK**

TEACHERS INSURANCE AND           :
ANNUITY ASSOCIATION OF AMERICA,  :
                                 :
       Plaintiff,                :
                                 :    CASE NO. 21 Civ. 3712 (ALC)
v.                               :
                                 :
MELANIE SIMONS,                  :
                                 :
       Defendant.                :

### AMENDED COMPLAINT

Teachers Insurance and Annuity Association of America ("TIAA") hereby brings the following Amended Complaint against Defendant Melanie Simons ("Simons") and, in support thereof, avers as follows:

### I. PARTIES

1.      TIAA is a New York life insurance company with its headquarters and principal place of business in New York.

2.      Simons is a former Wealth Management Director for TIAA. Simons is a citizen of Virginia and resides in Vienna, Virginia.

### II. JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this dispute by virtue of diversity of citizenship, 28 U.S.C. §1332. The amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

4.      Personal jurisdiction and venue are proper in this district under Simons' Voluntary Separation and Release Agreement ("VSP Agreement") providing as follows: "**Resolution of Disputes**. You agree to submit to the jurisdiction of the courts of the State of New York or the

federal court located in the Southern District of New York in connection with any action related to this Agreement…" (*See* VSP Agreement at pp. 13-14, ¶ 19).

### III. FACTS

#### A) Simons' Contractual Obligations

5.     TIAA provided Simons with a host of benefits throughout her employment, including the ability to earn a very substantial income.

6.     Simons voluntarily terminated her employment with TIAA in November 2020.

7.     In exchange for valuable consideration in excess of $500,000, in the VSP Agreement, Simons promised for a period of 24 months not to "solicit, recruit, induce, urge, or encourage, any employee… of TIAA to terminate, cancel, withdraw, or reduce its relationship with TIAA." (*Id*. at p. 8, ¶ 8(b)(ii)(A)).

8.     The VSP Agreement contains other covenants including, without limitation, Simons' agreement not to use or disclose confidential information on behalf of herself or any third party. (*Id*. at pp. 5-6, ¶ 6).

9.     Under the VSP Agreement, TIAA is entitled to "all forms of injunctive relief" in the event of an "actual or threatened breach" by Simons of her non-solicitation or confidentiality covenants. (*Id*. at pp. 9-10, ¶ 11).

10.     The VSP Agreement also provides that TIAA is entitled to expedited discovery in aid of a preliminary injunction motion "without the necessity that TIAA first seek a court order authorizing such discovery…." (*Id*. at p. 10, ¶ 11).

11.     In addition to injunctive relief, under the VSP Agreement, TIAA is entitled to seek legal remedies, including "the recovery of money damages from you." (*Id*. at p. 10, ¶ 11).

12.     Significantly, the VSP Agreement states that the over $500,000 in consideration paid to Simons is in return for "observing its terms." (*Id*. at p. 2, ¶ 2). The VSP Agreement

reiterates that "[y]ou agree and acknowledge that the Separation Consideration described in Paragraph 2 is conditioned on you complying with all of the requirements…" (*Id*. at p. 4, ¶ 3).

13.     In the VSP Agreement, Simons further acknowledged that she was advised by TIAA to consult with an attorney of her choosing and that **"[y]ou fully understand the significance of all of the terms, conditions, and consideration provided in this Agreement, and you affirm that you are signing it knowingly and voluntarily in acceptance of all of its terms, conditions, and consideration."** (*Id*. at p. 14, ¶ 20(e)-(f)) (bold in the original).

14.     As a condition of her ongoing affiliation with TIAA, in 2015 Simons agreed to similar non-solicitation and confidentiality covenants in the TIAA Confidentiality and NonSolicitation Agreement (the "2015 Agreement").

15.     The VSP Agreement makes clear that the non-solicitation and confidentiality covenants contained therein "are in addition to and are enforceable in connection with any similar terms in any plan or other agreement to which you are subject and do not supersede such terms, which you hereby confirm and agree to honor fully." (*See* VSP Agreement at p. 6, ¶ 6(c) and p. 9, ¶ 8(e)).

16.     The 2015 Agreement (at pp. 8, ¶ 7) likewise provides that TIAA is entitled to a TRO and preliminary injunctive relief in the event of an "actual or threatened breach" by Simons of her non-solicitation or confidentiality covenants.

17.     Under the 2015 Agreement, TIAA is entitled to expedited discovery in aid of a preliminary injunction motion, without the need for TIAA to first seek a court order authorizing such discovery. (*See* 2015 Agreement at p. 8, ¶ 7).

18.     The 2015 Agreement expressly provides: "11. **EMPLOYEE'S AFFIRMATION OF THOROUGH REVIEW**.   Employee affirms that employee has carefully read this

3

Agreement, knows and understands its terms, conditions and effective date, and has had the opportunity to ask any questions that Employee may have had prior to signing this Agreement." (*Id.* at pp. 10, ¶ 11) (capitalization in the original).

19.     Under the 2015 Agreement, TIAA also is entitled to liquidated damages for any violation by Simons of her non-solicitation covenant. (*Id.* at pp. 5-6, ¶ 2(g)).

20.     In addition, both the VSP Agreement and 2015 Agreement provide for attorneys' fees and costs in the event of any violations thereof by Simons. (*See* VSP Agreement at p. 10, ¶ 11 and 2015 Agreement at p. 8, ¶ 7).

### B) Three TIAA Wealth Managers Simultaneously Join a New Company as "Co-Founders" With Simons and Simons Refuses to Provide any Satisfactory Explanation

21.     On February 26, 2021, Mitchell Falter ("Falter"), Jessie Doll ("Doll"), and Thomas Massie ("Massie"), three TIAA Wealth Managers formerly supervised by Simons, simultaneously gave notice of their resignation effective March 28, 2021.[1]

22.     Falter, Doll, and Massie all were valuable TIAA employees who collectively serviced TIAA clients with over $2.1 billion dollars in assets invested with TIAA and generating well over $1 million in annual revenues for TIAA.

23.     In fact, shortly before Massie resigned, Simons' supervisor (Molly McCormack) had recommended that he be promoted. Ms. McCormack, who had responsibility over the group in which both Doll and Massie worked, also had made the specific determination shortly before their respective resignations that it would be a loss to TIAA if either left the company. Falter was a Senior Wealth Manager, who are generally among TIAA's most seasoned and valued employees.

---

[1] All had 30-day notice obligations to TIAA.

4

24.     On March 30, 2021, just two days after their notice periods concluded, TIAA discovered that Falter, Doll, and Massie all had joined Reframe Wealth as "co-founders" along with Simons. The only four members of Reframe Wealth are Simons and the aforementioned three former TIAA Wealth Managers.

25.     Simons is the CEO of Reframe Wealth.

26.     By correspondence dated April 1, 2021, among other things, TIAA demanded a satisfactory explanation for the coordinated departures of Falter, Doll, and Massie and their roles as "co-founders" with Simons of Reframe Wealth.

27.     In an April 2, 2021 response, Simons' attorney questioned the validity of her covenant not to solicit employees, notwithstanding the valuable consideration TIAA paid Simons to comply with it, and failed to provide the satisfactory explanation sought by TIAA.

28.     Instead, Simons' attorney stated in conclusory fashion, and without any specifics, that Simons did not solicit any TIAA employees and that Falter, Doll, and Massie "each independently made the choice to resign from TIAA on their own accord without any input or suggestion from Ms. Simons."

29.     By correspondence dated April 5, 2021, TIAA reiterated its demand for a satisfactory explanation for the simultaneous departures of Falter, Doll, and Massie. Indeed, the April 2, 2021 response from Simons' attorney did not say when, if at all, Falter, Doll, and Massie may have reached out to Simons, about going into business together, much less provide any documentation substantiating that they, rather than Simons, had precipitated the discussions about a joint venture.

30.     Having the express right under both the VSP Agreement and the 2015 Agreement to expedited discovery "without the necessity that TIAA first seek a court order authorizing such

5

discovery," *see* VSP Agreement at p. 10, ¶ 11 and 2015 Agreement at p. 8, ¶ 7, in this same

April 5, 2021 correspondence, TIAA also sought (i) "specific facts leading up to Mr. Falter, Ms.

Doll, and Mr. Massie resigning from TIAA to join Reframe Wealth," (ii) details in regards to any

communications between Simons, on the one hand, and Falter, Doll, or Massie, on the other

hand, from November 2, 2020 (the date Simons signed the VSP Agreement) and the time Falter,

Doll, and Massie gave notice of their resignation from TIAA, and (iii) emails, texts, and other

documentation reflecting these communications.

     31.     One of these communications was between Simons and Falter occurring only

four days after Defendant signed her VSP Agreement containing her covenant not to solicit

TIAA employees, either directly or indirectly.  Upon information and belief, Defendant initiated

this communication.

     32.     In its April 5, 2021 correspondence, TIAA sought a response by the following

day.

     33.     In an April 6, 2021 email, Simons' attorney provided assurances that Ms. Simons

"wants to be as cooperative as possible responding to your requests" and "[t]o that end, she is

currently gathering the information that is necessary for the purpose to respond to the various

requests set forth in your letter."

     34.     Claiming "it is not possible for us to get you a substantive response in the next 24

hours," Simons' attorney proceeded to state: "We can, however, commit to getting you a

response by the end of the week, at the latest."

     35.     Based on the assurances in the email, including that Simons "wants to be as

cooperative as possible" and is "currently gathering the information that is necessary for the

purpose to respond to the various requests set forth in your letter," TIAA accommodated this

request.

36.     On Friday, April 9, 2021, Simons' attorney completely reversed course and refused to provide any information or documentation in response to TIAA's April 5, 2021 correspondence.

37.     While describing TIAA's requests for information/documentation as "excessive" and "unreasonable," tellingly Simons' attorney said nothing of the sort in his April 6, 2021 email.

38.     In his April 9, 2021 correspondence, Simons' attorney did not even provide TIAA with the "information" he previously represented Simons had been "currently gathering."

39.     Had Defendant provided an adequate explanation for the simultaneous departures of Mr. Falter, Ms. Doll, and Mr. Massie to join her as "co-founders" of Reframe Wealth, an entity for which Simons is the CEO, and simply provided TIAA text messages and emails confirming she had not solicited them in breach of her obligations, TIAA would not have filed this action.  But Simons refused to do so, in spite of the prior assurances from her attorney.

40.     To date, Simons continues to refuse to provide TIAA with any explanation at all, much less a satisfactory explanation, as to how it is that three Wealth Managers all simultaneously resigned from TIAA and shortly thereafter became "co-founders" along with Simons of Reframe Wealth, an entity competing with TIAA in providing investment services to the investing public.

## COUNT I – BREACH OF CONTRACT

41.     The allegations of Paragraphs 1 through 40 are incorporated herein by reference with the same force and effect as if set forth in full below.

42. The VSP Agreement and 2015 Agreement, including the non-solicitation and confidentiality provisions, are fully enforceable.

43. The covenants not to solicit co-employees contained in both the VSP Agreement and 2015 Agreement are designed to protect TIAA's legitimate business interests in protecting its valued employees, such as Mr. Falter, Ms. Doll, and Mr. Massie, its client base which TIAA spends a considerable sum each and every year to compile and maintain, and the confidentiality of its client information.

44. As a former TIAA Wealth Management Director for TIAA, Simons is uniquely positioned to siphon other TIAA employees with access to TIAA's confidential client information to join her new venture.

45. Mr. Falter, Ms. Doll, and Mr. Massie all are "financial planners" at Reframe Wealth and, in that capacity, work directly with clients to service their investing needs. When any TIAA Wealth Manager leaves the company for a competitor, TIAA confronts the risk that it will lose clients formerly serviced by the Wealth Manager. In this case, Mr. Falter, Ms. Doll, and Mr. Massie serviced approximately 1275 client relationships with over $2.1 billion invested with TIAA.

46. TIAA has complied with all of its obligations under the VSP Agreement and 2015 Agreement.

47. Simons has breached the VSP Agreement and the 2015 Agreement. Under both, Simons had a contractual obligation to engage in expedited discovery without the need for a court order authorizing same. Simons refused to comply with this contractual obligation.

48. Based on (i) the coordinated nature of the departures of Mr. Falter, Ms. Doll, and Mr. Massie to join Simons as "co-founders" of Reframe Wealth only two days after the conclusion

8

of their notice periods, (ii) Simons' role as CEO of Reframe Wealth, (iii) Simon's refusal to provide an adequate explanation for the aforementioned coordinated departures, (iv) Simon's refusal to provide any of her text messages and email communications with Mr. Falter, Ms. Doll, and Mr. Massie in between her execution of the VSP Agreement and their *en masse* departures, and (v) the fact that Simons had at least one communication with Mr. Falter only four days after signing the VSP Agreement, upon information and belief, Simons solicited Mr. Falter, Ms. Doll, and/or Mr. Massie, either directly or indirectly, to terminate their affiliations with TIAA and join Reframe Wealth.

49.     WHEREFORE, by virtue of the foregoing acts, TIAA demands that judgment be entered in its favor for (i) compensatory damages in an amount to be determined at trial but not less than the over $500,000 in consideration provided to Simons under the VSP Agreement; (ii) liquidated damages against Simons as provided for under the 2015 Agreement; (iii) punitive damages in an amount to be determined at trial; (iv) a permanent injunction enforcing Simons' non-solicitation and confidentiality obligations; (v) attorneys' fees and costs as provided for under the VSP Agreement and 2015 Agreement, and any other relief the court deems proper.

9

Dated: New York, New York

June 30, 2021

KENT, BEATTY & GORDON, LLP

Jack A. Gordon
Joshua B. Katz
Eleven Times Square
New York, NY 10036
(212) 421-4300
jag@kbg-law.com
jbk@kbg-law.com

/s/Christopher C. Coss
Christopher C. Coss
Coss & Momjian, LLP
111 Presidential Boulevard, Suite 214
Bala Cynwyd, Pa. 19004
(610) 667-6800
(610) 667-6620 (fax)
ccc@cossmomjian.com

*Attorneys for Plaintiff Teachers Insurance
and Annuity Association of America*

## CERTIFICATE OF SERVICE

I, Christopher C. Coss, hereby certify that, on June 30, 2021, I served a true and correct copy of the foregoing Amended Complaint on all counsel of record through the Court's electronic filing system.

/s/Christopher C. Coss
Christopher C. Coss

# 504937