USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/29/2022

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **TEACHERS INSURANCE & ANNUITY ASSOCIATION OF AMERICA,** | |
| Plaintiff, | 21-cv-3712 (ALC) |
| -against- | <u>**OPINION AND ORDER**</u> |
| **MELANIE SIMONS,** | |
| Defendant. | |

**ANDREW L. CARTER, JR., United States District Judge:**

Invoking this Court's diversity jurisdiction, Plaintiff Teachers Insurance & Annuity Association of America ("TIAA") brings this action against former employee Melanie Simons alleging breach of contract. Simons was a Wealth Management Director at TIAA. In 2015, as part of her continued employment, Simons signed a Confidentially and Non-Solicitation Agreement (the "2015 Agreement").[1] In November 2020, Simons voluntarily terminated her employment with TIAA. In accepting her resignation, TIAA required that Simons sign a Voluntary Separation and Release Agreement ("VSP Agreement"). The VSP Agreement also contained non-solicitation and confidentiality covenants, which Simons would have to abide for a period of 24 months after leaving TIAA. Simons accepted a sum of $500,000 as consideration for the VSP Agreement. Both the 2015 Agreement and the VSP Agreement includes language

---

[1] For the full text of these agreements, see Exhibits A and B to ECF No. 8 ("Declaration of Jill Popovich"). Plaintiff did not attach the VSP Agreement or the 2015 Confidentiality Agreement to the Original Complaint or the Amended Complaint, but it is specifically pleaded in the Original Complaint and the Amended Complaint. *See* Am. Compl. ¶ 90. Therefore, the Court may consider it in deciding this Rule 12(b)(6) motion. *See In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2014) ("In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies.").

granting TIAA, among other things, the privilege to conduct discovery absent a court order in the event of an actual or threatened breach and to seek injunctive relief from the courts.

Upon leaving TIAA, Simons created a new firm called Reframe Wealth. On February 26, 2021, Mitchell Falter, Jessie Doll, and Thomas Massie, all TIAA Wealth Managers, gave notice to TIAA of their intention to resign from the company in 30 days. Together, Falter, Doll, and Massie handled over $2 billion in assets for TIAA. All three were formerly supervised by Simons. On March 30, 2021, two days after the effective date of their notice, all three former wealth managers began working for Reframe Wealth. All three were listed as "co-founders" of Reframe Wealth.

On April 1, 2021, TIAA reached out to Simons seeking an explanation as to these resignations. TIAA believed that the timing of the resignations, the employee's positions as members of Simmons' team, and their new employment at Reframe Wealth indicated that Simons was involved in the employee's resignations. On April 2, 2021, Simmons's attorney responded to TIAA's inquiry. Simons' attorney denied the solicitation allegations, stating that the employees resigned from TIAA of their own volition. Simons' attorney also questioned the validity of the non-solicitation agreements Simons. TIAA later learned of correspondence between two of the Former Wealth Managers and Simons only four days after she signed the VSP agreements.

In accordance with the 2015 Agreement and the VSP Agreement, TIAA attempted to conduct limited discovery to ascertain the factual circumstances surrounding the departures of Falter, Doll, and Massie. On April 5, 2021, TIAA emailed Simons' attorney, requesting:

> (i) "specific facts leading up to Mr. Falter, Ms. Doll, and Mr. Massie resigning from TIAA to join Reframe Wealth," (ii) details in regards to any communications between Simons, on the one hand, and Falter, Doll, or Massie, on the other hand, from November 2, 2020 (the date Simons signed the VSP Agreement) and the time Falter, Doll, and

>Massie gave notice of their resignation from TIAA, and (iii) emails, texts, and other documentation reflecting these communications.

Compl. at ¶ 30. On April 5, 2021, Simons' attorney expressed desire to comply with the request. However, Simons' attorney failed to respond to TIAA's request, deeming it excessive. On April 27, 2021, TIAA filed this action. Defendant now moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* When ruling on a Rule (12)(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and "draw all reasonable inferences in [plaintiff's] favor." *See, e.g.*, *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011)

Defendant argues that Plaintiff has not sufficiently pleaded a breach of contract and that the non-solicitation provisions are unenforceable. The Court takes each in turn.

**Breach of Contract.** To state a claim for breach of contract under New York law, a plaintiff must allege (1) the existence of an agreement between plaintiff and defendant; (2) due performance of the contract by plaintiff; (3) a breach of contract by defendant; and (4) damages. *See, e.gi Compagnia Importazioni Esportazioni Rapresentanze v. L-3 Commc'ns Corp.*, No. 06 CIV 3157 NRB, 2007 WL 2244062, at *5 (S.D.N.Y. July 31, 2007).

Defendant contends that the amended complaint does not sufficiently allege a breach. Plaintiff alleges that Defendant communicated with the Former Wealth Managers mere days after signing the VSP Agreement. Less than two months later, the Former Wealth Managers tendered their resignations and joined Defendant's newly created wealth management firm. The implication of these facts is that Defendant had some involvement with the resignation of these employees. Plaintiff's allegations are plausible and at this stage in the litigation, the allegations need only meet the plausibility requirements.

***Enforceability of Non-Solicitation Covenants.*** Defendant argues that even in the event of the Court finds that she has breached the contract, the non-solicitation covenants are unenforceable because she was involuntarily terminated. "New York courts have generally concluded that restrictive covenants in employment contracts — such as non-compete, non-solicitation, and non-recruitment clauses — must be subjected to heightened judicial scrutiny since they potentially impinge on individual agency and an employee's ability to make a living." *Oliver Wyman, Inc. v. Eielson*, No. 15-CV-5305 (RJS), 2017 WL 4403312, at *5 (S.D.N.Y. Sept. 29, 2017). However, the Second Circuit recognizes an exception this inquiry under the employment choice doctrine. Under the employee choice doctrine, "New York courts will enforce a restrictive covenant without regard to its reasonableness if the employee has been afforded the choice between not competing (and thereby preserving his benefits) or competing (and thereby risking forfeiture)." *Int'l Bus. Machines Corp. v. Mueller*, No. 14-CV-9221 (KMK), 2017 WL 4326114, at *7 (S.D.N.Y. Sept. 27, 2017) (quoting *Lucente v. Int'l Bus. Machines Corp*., 301 F.3d 243, 254 (2d Cir. 2002). Courts apply doctrine only where the employee's discharge was involuntary and the employer demonstrates a "continued willingness to employ the party" subject to the covenant. *Id.* Importantly, "the factual determination whether

an employee was involuntarily terminated is generally not appropriate for summary judgment." *Id*.

Here, Defendant asserts that the termination of her employment was involuntary because her position was eliminated. However, Plaintiff contends that Defendant was offered the opportunity to apply to other open positions at TIAA. She declined to do so, choosing instead to sign the VSP agreement and part ways with the company. Whether or not Simons was involuntarily dismissed from TIAA is an inappropriate factual determination for this stage of the litigation. *See Lucente*, 301 F.3d at 254 ("[T]he factual determination whether an employee was involuntarily terminated is generally not appropriate for summary judgment."). The Court finds that Plaintiff's pleadings regarding the voluntary nature of Defendant's termination is sufficient to defeat Defendant's motion to dismiss.

Accordingly, Defendant's motion to dismiss is **DENIED**. The Clerk of the Court is respectfully directed to terminate ECF No. 34. The Court will refer this action to the designated Magistrate Judge for general pretrial supervision.

SO ORDERED.
Dated:   March 29, 2022
         New York, New York

_____
ANDREW L. CARTER, JR.
UNITED STATES DISTRICT JUDGE