# Coss & Momjian, LLP

Attorneys at Law
Two Bala Plaza, Suite 300
Bala Cynwyd, PA 19004
Telephone: 610-667-6800
Fax: 610-667-8174

January 23, 2023

<u>Via Electronic Court Filing and Email</u>

The Honorable Andrew L. Carter, Jr.
United States District Court, Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

<u>Re: Teachers Insurance and Annuity Association of America v. Melanie Simons, Case No. 1:21-cv-03712-ALC</u>

Dear Judge Carter:

Plaintiff Teachers Insurance and Annuity Association of America ("TIAA") respectfully submits this correspondence in response to the January 20, 2023 correspondence from Defendant in anticipation of her motion for sanctions. Defendant has no basis for sanctions and, indeed, her threatened motion for sanctions is itself borderline frivolous.

In reversing an award of sanctions, the Second Circuit in *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993), stated: "As we have repeatedly held, Rule 11 'is targeted at situations where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands.'" (*quoting Associated Indem. Corp. v. Fairchild Indus*., 961 F.2d 32, 34 (2d Cir. 1992). *See also Int'l Techs. Mktg. v. Verint, Sys*., 2019 U.S. Dist. LEXIS 43838, at * 18, 2019 WL 1245013 (S.D.N.Y., March 18, 2019) ("Given the Second Circuit's instruction 'to grant Rule 11 sanctions sparingly' and, further, to 'resolve all doubts in favor of the party against whom sanctions are sought,' Verint's motion for sanctions is denied.") (*quoting Rodick, supra*).

Far from having "absolutely no chance of success under the existing precedents," in its January 2, 2023 correspondence (ECF58), TIAA set forth the numerous reasons that it – not Defendant – is entitled to summary judgment. Under the VSP Agreement, TIAA paid Defendant over $500,000 for "observing its terms." (ECF30 at ¶11). Defendant's constant argument that she did not solicit Mitchell Falter ("Falter"), Jessie Doll ("Doll"), or Thomas Massie ("Massie"), three TIAA Wealth Managers formerly supervised by Defendant, because Falter allegedly reached out to her, is without merit. *See, e.g., FCE Benefit Administrators, Inc. v. George*

Honorable Andrew L. Carter, Jr.
January 23, 2023
Page 2

*Washington University*, 209 F. Supp.2d 232, 239 (D.D.C. 2002) ("Even though she was initially contacted by Melwood [the client]… she assumed an active role in Melwood's decision-making process."); *Corporate Techs., Inc. v. Hartnett*, 731 F.3d 6, 12 (1st Cir. 2013) ("…the identity of the party making the initial contact is just one factor among many that the trial court should consider" in determining if solicitation occurred); *Fti v. Duffy*, Mass. Super. LEXIS 81, at *13-14 (Mass. Super. June 22, 2022) ("Defendant's insistence that solicitation requires initiation of contact, and thus there can never be a violation of a non-solicitation provision if a colleague or client initiates contact with a department employee, is without merit."). In fact, Defendant's Confidentiality and Non-Solicitation Agreement provides: "'Solicit' means to engage in any communication that knowingly assists, induces, or encourages the other party to take a desired action *regardless of which party first initiated contact or whether the communication was in response to a question or inquiry*." (ECF30, Ex. B, at ¶2av) (emphasis added).

Defendant's January 20, 2023 correspondence also ignores that she promised not to "*encourage*" or "*attempt to encourage*" any TIAA employees to leave the company. Here, the evidence is undisputed that Defendant played a very active role in encouraging Falter, Doll, and Massie to leave TIAA. Defendant emailed them "To Do Lists" and was the primary liaison with the marketing, compliance, and other entities ReFrame needed to work with in order to launch. Defendant conceded she was responsible for "identifying just about anything that needed to happen in order to get the business started."

Doll testified that Defendant communicated with her on *over 10 occasions* about forming ReFrame. Falter confirmed Defendant communicated with him on multiple occasions about forming ReFrame. The mere fact that TIAA did not ask questions of Doll and Falter at their depositions about their Declarations filed at the outset of this case is meaningless. Rather than spending time on these one-page, conclusory documents, TIAA asked about the *facts* leading to the joint formation along with Defendant of their new competing venture.

Defendant further admitted at her deposition that "I know of dozens, if not hundreds, of people who considered departing their employer and then ultimately decided to stay." Doll testified she did not make the final decision to resign until February 26, 2021. Asked "[w]hen did you make the decision to leave TIAA," Falter similarly replied: "Fundamentally when I resigned my employment [on February 26, 2021]." Defendant could have (and should have) waited for Falter, Doll, and Massie to leave TIAA before embarking on her discussions with them. But Defendant instead played a very active role in establishing ReFrame, providing crucial support to the formation of their new company for *months before they resigned from TIAA*.[1]

In *Oliver Wyman, Inc. v. Eielson*, 282 F. Supp.3d 684, 695 (S.D.N.Y. 2017), the court held that the "timing of Defendants' departure" helped support "a compelling inference that Eielson did in fact *encourage* Adam to leave the firm to work with him on a new commercial

---

[1] Oxford Dictionary's definition of "encourage" includes to "give support" which Defendant indisputably did, in the process ensuring no one changed their minds about whether to stay or leave TIAA.

venture." (emphasis added). Precisely the same is true here. Doll, Falter, and Massie simultaneously resigned to join Defendant at ReFrame.

Crucially, Defendant's January 20, 2023 correspondence ignores *Eielson* and all the other case law cited in TIAA's January 2, 2023 pre-motion correspondence to the Court in anticipation of its own summary judgment motion. In a recent case, *Peoplestrategy, Inc. v. Hearthstone Advisors LLC*, 2021 WL 1518621 (E.D. Pa. April 16, 2021), the court granted summary judgment in plaintiff's favor under virtually identical circumstances, finding that the defendant, by "working together" with another of plaintiff's employees to "create a new venture," "took steps to encourage" him to leave. *See also Seniorlink, Inc. v. Landry*, 2021 WL 3932309 (D. Mass. Sept. 2, 2021) (summary judgment granted in employer's favor where defendant's actions "encouraged" departure even though employee responded to a public job posting and defendant did not personally interview employee for the position).

The non-solicitation covenants also are fully enforceable. As the Court held in *Wyman, supra*: "[U]nlike a non-compete clause, the non-recruitment clause imposes no limitations on the work Eielson can perform – it only limits his ability to recruit others from Oliver Wyman to join him." 282 F. Supp.3d at 695. *See also Renaissance Nutrition, Inc. v. Jarrett*, 2012 WL 42171, at * 5 (W.D.N.Y. Jan. 9, 2012) (non-recruitment clauses are "inherently more reasonable and less restrictive" that non-compete clauses). In the case of the VSP Agreement, the Court need not even inquire as to its reasonableness given that Defendant had a choice, *i.e.*, comply with the provision and keep the over $500,000 or violate it and forfeit the consideration. *See IBM v. Mueller*, 2017 U.S. Dist. LEXIS 159618 (S.D.N.Y. Sept. 27, 2017). Once again, Defendant's January 20, 2023 correspondence does not address, much less distinguish, this case law.

Lastly, Defendant fails to cite any case law in the January 20, 2023 correspondence setting forth the standard for awarding sanctions. As emphasized at the outset, it is a very high standard Defendant cannot possibly satisfy. Instead, in an attempt to intimidate the undersigned counsel and New York counsel, Defendant cites two cases imposing "joint and several liability" for sanctions on both the party and its counsel. (ECF65 at p. 3). The facts in the instant case, however, including the ample evidence that Defendant "encouraged" and/or "attempted to encourage" Falter, Doll, and/or Massie to leave TIAA rather than waiting until *after* they had resigned before providing them with assistance vital to the formation of their new joint venture, render Defendant's claim for sanctions frivolous.
.

                                                                      Respectfully submitted,

                                                                      /s/ Christopher C. Coss
                                                                      Christopher C. Coss

cc: Counsel of Record (via ECF)